# NABORS v. THE STATE.

1. A finding by the jury that the prisoner is guilty on the first charge, when the indictment contains more than one count, will be considered as affirming that he is guilty, as charged in the first count of the indictment, and not guilty as charged in the other counts.
2. One may be convicted and sentenced on an indictment for stealing a slave, as a case of grand larceny, where its value exceeds twenty dollars, and the offence is not attended with the circumstances of aggravation, specified in the 18th section of the 4th chapter of the penal code, before it was repealed and re-enacted in other terms.
3. When the term of a circuit court is limited to one week, it expires on Saturday night at 12 o'clock, as no judicial action can be had on Sunday, and a verdict rendered after that hour, is irregular, and and will not sustain a conviction.

WRIT of Error to the Circuit Court of Pike county.

Nabors was indicted at spring term, 1843, of the circuit court of Pike county, for slave stealing. The indictment contains several counts, and the first charges, that he, on the 1st day of September, 1842, in Pike county, a negro boy slave, named Nathan, of the value of three hundred dollars, of the goods and chattels of one Henry M. Herrin, then and there being found, feloniously did steal, take and carry away, against the peace and dignity of the State of Alabama.

The jury returned a verdict "of guilty on the first charge," and the court thereupon, sentenced him to seven years imprisonment in the penitentiary.

A bill of exceptions was taken at the trial, from which it appears, that the hour of 12 o'clock, on Saturday night, had arrived, and the jury being then out on said cause, and not having agreed on their verdict, as to the guilt or innocence of the defendant, he, by his counsel, moved the court to have the case arrested from the jury, on the ground that the christian sabbath had arrived, and the six days allowed by the statute for holding the court, had elapsed, and therefore, that any action by the court or jury, would be extra judicial, and of no effect. This motion was overruled, and the jury was allowed to retain the case until the hour of two

o'clock, A. M., on said Sabbath morning, when they returned with a verdict of guilty—to all which, the prisoner excepted.

HARRIS, for the prisoner, made the following points:

1. That the verdict was uncertain and insufficient.

2. That the offence charged in the first count of the indictment, is not good, under the statute, in force when the act was committed—[Meek's Sup. 220, § 18,] nor is slave stealing an offence at common law.

3. The act under which the indictment is framed, was repealed pending the prosecution. [Act of 11th February, 1843.]

4. The conviction is void, as having taken place on a Sunday, and after the term of the court had legally expired. [Ned v. The State, 7 Porter, 213; Love v. The State, 4 Ala. Rep. N. S. 173; The State v. McLemore, 2 Hill's S. C. 680; 6 American Com. Law Cases, 260, note.]

S. F. RICE, for the Attorney General, insisted, that as the indictment was good for an offence at common law, the prisoner, under the 26th section of the 8th chapter of the Penal Code, [Clay's Dig. 442, § 26,] ought to receive the statute sentence.

2. The act substituted in the place of that repealed, provides no new or additional punishment, therefore, the prisoner can be sentenced under the act in force when the offence was committed. [People v. Reader, 12 Wend. 425; People v. Phelps, 5 Wend. 10.]

3. Although the court might properly have discharged the jury under the circumstances, yet it was not bound to do so, nor is the verdict void for having been returned on Sunday morning.

GOLDTHWAITE, J.—1. The first point presented here, is not materially different from one decided by us at a previous day in this term, in the case of Nancy v. The State. There, the finding of the jury extended only to a part of the charge contained in the sole count of the indictment, yet we considered the finding as good for so much of the offence as it stated, and that it was equivalent to an acquittal of the residue of the charge. Here, the verdict clearly refers to the first count of the indictment, and may properly be considered as an affirmation of the prisoner's

26

guilt, in manner and form as thereby charged, and that he is not guilty of the charges contained in the other counts.

2. The next inquiry is, whether the prisoner can lawfully be sentenced to receive any punishment upon this verdict, and if any, what that punishment ought to have been.

It is said, that slave stealing, was provided to be punished by a particular statute in force when this felony was committed, but that it was afterterwards repealed.    We shall not consider the effect of the repeal of the statute, because whatever that may be upon the prisoner's case, it is certain, the count under which he has been convicted, is not framed with reference to that enactment, which was in these terms:    Every person who shall inveigle, steal, carry or entice away any slave, without the consent of such slave, or shall hire, aid or counsel any person to inveigle, steal, carry or entice away, as aforesaid, any such slave, with a view to convert such slave to his own use, or to the use of any other person, or to enable such slave to reach some other State or country, where such slave may enjoy freedom, such person on conviction shall be punished by confinement in the penitentiary, not less than ten years.  [Meek's Sup. 220, § 18.]

Now it will be evident, on looking at this enactment, that it only covers the case of stealing a slave *without his consent,* and with *the particular views, or one of them,* indicated by the terms used.   It may be asked how was the stealing of a slave *with his consent,* punished?   It is in effect urged, that it was not punishable by law, as there is no statute expressly, and in terms, covering such a larceny; and it is said that slave stealing was not an offence known to the common law.

Waiving the consideration of the argument in that aspect, it is a sufficient answer that slaves have always, in this State, been considered as property, and are within the general terms, goods or chattels.   When, therefore, the 57th section of the 4th chapter of the Penal Code, provides that the larceny of money, goods or chattels, &c. &c. when the value of the property stolen exceeds 20 dollars, shall be punished by imprisonment, for not less than two, nor more than five years, in the penitentiary, there is no doubt with us, that it includes all cases of slave stealing not included in the statute.   We have already shown that the offence with which the prisoner is charged and convicted, is not within the statute then in force, and therefore, it is entirely immaterial, to

consider what is the effect of its repeal and re-enactment in the form we now find it. But, being convicted of grand larceny under the terms of the section before referred to, he was liable under this conviction, if it can be sustained at all, to be sentenced for a term not less than two nor more than five years.

3. The remaining question is one of considerable importance in its connexion with public morals, but more so with reference to the administration of criminal justice. The position assumed by the prisoner's counsel, is, that the circuit court should have discharged the jury from the further consideration of this case upon the coming of the hour of 12 o'clock on Saturday night, as the Sabbath then commenced, and the term expired by its legal limitation.

The act directing that the circuit court of Pike county shall be held one week, as distinguished from six judicial days, does not, as we think, authorise the conclusion that any change was intended to be made in the law, with respect to the Sabbath.— This day, from a very remote period, has, by the common law, been regarded as *dies non juridicus*, and we have been able to find no precedent where a judicial act has been sustained, if done on that day. On the contrary, there are many cases reported, where the judgment of inferior courts have been reversed, because then given. [7 Comyn's Digest, 399; Temps. B. 3.] In the case of Swann v. Broome, [3 Burr, 1595,] the subject was fully examined, and the conclusion was, that no judicial act whatever, could be performed on that day. Our difficulty has not been, that Sunday is not *dies non juridicus*, but whether this conviction ought not to be sustained from the necessity of the case, but, perhaps, this is more imaginary than real, as the same difficulty may frequently occur whenever a term is limited. It is impossible to foresee that a jury may always agree upon a verdict before the term expires; and therefore, the difficulty would not be avoided if Sunday was stricken from the calendar. It is abundantly clear by the common law, that a jury was not necessarily discharged because of the intervention of a Sunday; and this is shown by many of the elder cases referred to by us, in the case of Ned v. The State, [7 Porter, 187,] which show that juries were carried by the judges, from court to court, in the same circuit. But when the court is limited to one week, as no judicial act can be performed on Sunday, the term necessarily expires at

the hour of 12 on Saturday night; and, in this case, when that hour arrived, nothing remained of the powers of the court, but those necessary to declare that its functions had ceased, and to remand the prisoner. It has been a serious question with us, how the precise time is to be ascertained, but there can be no other mode than to rest this matter with the presiding judge, whose opinion must of necessity be final and conclusive.

This conclusion renders it necessary that the judgment of the circuit court should be reversed entirely, and remanded for a trial *de novo*, upon all the counts of the indictment, and we may remark further, that if the verdict had been allowed to stand, no judgment could have been rendered on it, except for the punishment of grand larceny, and this is because the additional punishment provided by the 18th section of the 4th chapter of the Penal Code, creates a distinct offence, and therefore, is not governed by the 26th section of the 5th chapter.

Reversed and remanded.