SORRELLE v. CRAIG, Adm'r cum testa. an.

1. In an action of assumpsit by the representative of a deceased father against his son, on promissory notes made by the latter in 1837, and payable to the intestate, the defendant relied on payments and sets off to a greater amount than the sum sought to be recovered; to show that the sets off had been allowed on some other indebtedness to the testator, the plaintiff adduced evidence tending to prove, that the defendant had been unsuccessful in business, as a merchant, some years previous to making the notes, that he afterwards resided at his father's house, without any visible means, and then engaged in a business which required a considerable cash capital, and when he ceased to do that business in 1835, money could not be made of him on execution. *Held*, that this testimony did not tend to prove the fact it was intended to establish, that it was *prima facie* irrelevant, and should therefore have been excluded.

2. The testimony of a witness who stated that he was acquainted with the general character of one who had been examined on the other side, but disavowed all knowledge of the estimation in which he was held in the neighborhood of his residence, is inadmissible to discredit the latter—it

Sorrelle v. Craig, Adm'r, &c.

not appearing that the impeached witness had changed his residence, or that his employment was such as to cause his reputation to be as well known elsewhere, as in the vicinity of his home.

3. A person who states he has no knowledge of the general character of a witness, save only as connected with "some alledged frauds," cannot be examined for the purpose of impeaching his credibility.

4. Where a cause is submitted to a jury on Saturday night, the parties agreeing that the verdict might be received by the clerk, in the absence of the Judge, it is competent for the clerk to receive the verdict *on Sunday, if the court continues its session beyond the week,* and enter a judgment thereupon on some subsequent day of the term.

5. If the court trying a cause does not require a party to waive his exception, as a condition upon which an application for a new trial will be entertained, but considers and overrules the motion, an appellate court will not reject the bill of exceptions. And where the motion for a new trial is rested upon grounds not embraced by the bill of exceptions, the primary court cannot put the party excepting to an election.

Writ of Error to the Circuit Court of Dallas.

THIS was an action of assumpsit at the suit of the defendant in error, upon three promissory notes for the sum of eighteen hundred dollars each, made by the plaintiff in error, on the 5th September, 1837, and payable to the testator on the first day of March, 1839, 1840 and 1841. The cause was tried upon issues, among others, to the pleas of *non assumpsit,* payment, and set off, a verdict was returned for the plaintiff, for the sum of $2,495, damages, and judgment was rendered accordingly.

On the trial, the defendant excepted to the ruling of the court. It appears from the bill of exceptions, that the defendant relied on sets off and payments to an amount exceeding the plaintiff's demand, which the plaintiff insisted were allowed on some previous debt or liability of the defendant to his testator. Thereupon, witnesses were introduced by the plaintiff, who testified that the defendant, about the year 1830, was engaged in the business of selling goods at Cahawba, in which it was understood he was unsuccessful; after ceasing to do business, about the time stated, the defendant went to reside at the house of the testator, his father, without any visible means, of which the witnesses were informed. In a year or two afterwards, the defendant engag-

ed in purchasing negroes elsewhere, to be sold in Alabama; this business was continued up to 1835, at which time money could not be made of him by execution. To this evidence the defendant objected, and moved the court to exclude the same as irrelevant to the issues, but the objection was overruled.

The plaintiff then offered witnesses to impeach the character of Wiley J. Sorrelle, who had given evidence on behalf of the defendant. One of the witnesses introduced for this purpose, stated, that he was acquainted with the general character of the impeached witness, and would not believe him on oath. But being cross-examined, he stated that he lived twenty miles distant from him, and did not know in what estimation he was held in the neighborhood of his residence; thereupon the defendant prayed the court to exclude the testimony impeaching the witness, Sorrelle's character for veracity, but the prayer was refused by the court.

Another witness adduced by the plaintiff, stated that he did not know the character of Wiley J. Sorrelle, for truth, amongst his neighbors, but did know his general reputation as connected with some alledged frauds; whereupon he was asked whether, from that general reputation, the impeached witness was entitled to belief on his oath; to this question, the defendant objected, but his objection was overruled, and the witness answered in the negative.

At eleven o'clock on Saturday night, the jury retired to consider of their verdict. It was agreed that the verdict might be received by the clerk, in the absence of the Judge. At five o'clock on Sunday morning, the jury delivered their verdict to the clerk and dispersed, and the same was afterwards recorded and made the basis of the judgment of the court. On Monday, the defendant moved the court to set aside the judgment, and allow the cause to stand continued, as if no verdict had been rendered, on the ground that the court could not lawfully sit on Sunday, and the jury had dispersed, and were not then present to perfect their verdict; but this motion was overruled by the court.

At the close of the last paragraph, the court say, "the correctness of the foregoing is admitted, but the defendant had

Sorrelle v. Craig, Adm'r, &c.

submitted a motion for a new trial on different grounds, which had been overruled, and although it was inadvertently omitted to require him to say which he would waive, yet being satisfied with the verdict, and these matters not having influenced it, (as is believed,) the Judge declines to sign this as a bill of exceptions, unless the Supreme Court should deem it the party's right to have it signed, after a motion for a new trial overruled."

G. R. EVANS for the plaintiff in error, made these points, viz: 1. The evidence as to the business, supposed insolvency, &c. of the defendant below, in 1835, and previously, was irrelevant, calculated to mislead the jury, and consequently inadmissible. [1 Starkie's Ev. 386; 5 Ala. Rep. 38; 11 Mass. Rep. 140; Pet. C. C. Rep. 85; 5 Ala. Rep. 731.]
2. Neither of the witnesses adduced by the plaintiff to discredit the defendant's witness, manifested such an acquaintance with his general character, as made them competent to speak to his veracity. The second witness did not profess such an acquaintance, but merely that he had a knowledge of his "general reputation as connected with certain alledged frauds." [2 Wend. Rep. 352, 558; 14 Wend. R. 105; 18 Id. 146; 13 Johns. R. 504; 11 Sergt. & R. Rep. 198.]
3. The reception of the verdict on Sunday, was clearly unauthorized by law. [Clay's Dig. 592, §§ 1, 3; 9 Porter's R. 151; 5 Ala. R. 407; 6 Ala. R. 200.] 3. A motion for a new trial, if overruled, does not amount to a waiver of a bill of exceptions. [9 Porter's Rep. 104.]

C. G. EDWARDS, for the defendant in error, insisted, that the paper which had been signed and sealed as a bill of exceptions by the Circuit Judge, could not be treated as such. He never intended that it should thus operate; and this court will not allow it. Upon the errors assigned he was willing to submit the cause, if it should be determined there was a bill of exceptions.

COLLIER, C. J.—The evidence adduced by the plaintiff

68

in respect to the defendant 'having been unsuccessful as a merchant; his residence with his father, the testator; his engaging in a trade for several years which required a considerable cash capital; and his supposed inability to pay his debts two years previous to making the notes declared on, certai. ly do not warrant the inference that the off sets relied on as a defence, had been allowed him against a previous indebtedness to the testator. Such testimony does not show that he was indebted to his father, either for money lent, or upon any other account than the notes indicate. The most liberal interpretation of the facts, only leads to the conclusion, that the plaintiff had received money from some one to enable him to carry on trade. But it cannot be assumed in the absence of all proof to the point, that funds were advanced to him by any one in particular. If money was lent by the testator, there is nothing to repel the inference that the notes in question were not upon a subsequent settlement given for the repayment of what was due to him. The bill of exceptions does not state the date of the sets off relied on; if they were due when the notes were made, it might be reasonably intended that they were settled, and the notes showed the balance due; but if the sets off were of a later date no such presumption could be indulged.

The court always protect the jury from irrelevant testimony, by excluding it on objection, in the same manner as it rejects other incompetent proof. If evidence be irrelevant at the time it is offered, it is not error to reject it, because other evidence may afterwards be given, in connection with which it would become competent. If it would be relevant in conjunction with other facts, it should be proposed in connection with those facts, and an offer to follow the evidence proposed, with proof of those facts at a proper time. [Mardis' Adm'r v. Shackleford, 4 Ala. Rep. 493, and cases cited.] This view of the law may suffice to show, that if the bill of exceptions states the facts fully, the testimony should have been excluded for irrelevancy. [Greenl. on Ev. 59 to 63; 5 Ala. Rep. 731.]

In impeaching the credit of a witness, the examination must be confined to his general reputation, and will not be permitted as to particular facts; for every man is supposed to

Sorrelle v. Craig, Adm'r, &c.

be capable of supporting the one, but it is not likely that he should be prepared to answer the other, without notice; and unless his general character or behavior be in issue, he has no notice. [Greenl. on Ev. 512.] The regular mode, says the same learned author, of examining into the general reputation, is, to inquire of the witness, whether he knows the general reputation of the person in question among his neighbors; and what that reputation is; and whether, from such knowledge, the witness would believe that person upon his oath. In answer to such evidence, the other party may cross-examine those witnesses as to their means of knowledge, and the grounds of their opinion; or may attack their general character, and by fresh evidence, support the character of his own witness. The inquiry must be made as to his general reputation, where he is best known. It is not enough that the impeaching witness professes merely to state what he has heard others say; for those others may be but few. He must be able to state what is *generally said* of the person, by those among whom he dwells, or with whom he is chiefly conversant, for it is this only that constitutes his general reputation, or character. And *ordinarily*, the witness ought himself to come from the neighborhood of the person whose character is in question. If he is a stranger, sent thither by the adverse party to learn his character, he will not be allowed to testify as to the result of his inquiries. [Ib. 512-13; 1 Phil. on Ev. 212; 11 Serg't. & R. Rep. 198; 14 Wend. Rep. 105.]

In Bakeman v. Rose, 18 Wend. Rep. 146, Senator Tracy considers the form of the question to be proposed to a witness, who is introduced for the purpose of impeaching one who has preceded him, and after noticing the form stated by *Swift* and Starkie in their treatises upon evidence, gives the preference to that which was sanctioned by *Lord Ellenborough*, in Mawson v. Hartsink, et al. 4 Esp. Rep. 102; 1 Phil. Ev. 229. The question was there put in this form, viz: "Have you the means of knowing what the general character of this witness is; and from such knowledge of his general character, would you believe him on his oath?" It is supposed by the learned Senator, that this form is most appropriate, because it allows the impeaching witness, not on-

ly to consider the general reputation of the assailed witness for truth, but for a disregard of virtue, and a want of moral principle. And if an inquiry embracing as great a scope as this, were not tolerated, then one whose character was deservedly infamous, might impress his testimony upon the jury, with all the weight of the purest man, simply because a disregard of truth had been overlooked in the prominence of his other vices; or he may, by the most watchful caution, have observed a general veracity in his intercourse with society, which would render his reputation unassailable, if the question were limited to his character for truth.

Whether an inquiry into the general character of a witness should be confined to his reputation for truth, or may involve his entire moral character and estimation in society, is a point upon which the decisions are not uniform. Senator Tracy, in the case cited, thinks that the credibility of a witness should be sought through his general moral character; and such too are the decisions of North Carolina and Kentucky. [The State v. Boswell, 2 Dev. Rep. 209; Hume v. Scott, 3 Marsh. Rep. 261-2; see also, 1 Hill's S. C. Rep. 251-8-9; 2 Hayw. Rep. 300] Vice is certainly social, and my observation upon human character, persuades me, that a frequent indulgence in any of the grosser offences against morality and religion, weakens the force of moral principle, renders less sensitive the conscience, and predisposes to a disregard of truth, not only where there is a temptation to speak falsely, but from the depravity of the heart itself. As a sentient being, it is necessary that man should cultivate the affections, and keep in active exercise the moral feelings, if he would preserve them in healthfulness and vigor. Entertaining this opinion of the human constitution, I should be strongly inclined to approve a form of question similar to that which Lord Ellenborough thought best.

But the present case does not make it necessary to determine whether the question should be proposed to the impeaching witness in the restricted or enlarged form; for whether the one or the other be adopted as most proper, it is clear, that the testimony by which the defendant's witness was impeached should have been rejected. One of the witnesses, it is true, stated that he was acquainted with his gen-

Sorrelle v. Craig, Adm'r, &c.

eral character, but upon being interrogated, disavowed all knowledge of the estimation in which he was held in the neighborhood in which he resided. To have made the testimony of this witness admissible, it should have been shown that Wiley J. Sorrelle had, at some time not long previously, resided in some other neighborhood, in which his character was known to the witness; or that, although he had a fixed residence, yet such was the character of his employment, or the manner of his intercourse with society, that his reputation was as well known elsewhere as in the vicinity of his home.

In respect to the other witness, he did not profess to know the general reputation of the defendant's witness, except as it was connected with "some alledged frauds." It is clear, from what has been said, that such knowledge did not make him acquainted with the general character—he only formed his opinion from what was said of the impeached witness, in connection with some one or more fraudulent transactions.

The act of 1803, "for the suppression of vice and immorality," enacts, that "no person or persons, upon the first day of the week, called Sunday, shall serve, or execute, or cause to be served, or executed. any writ, process, warrant, order, judgment, or decree, (except in criminal cases, or for a breach of the peace,) but the service of every such writ, process, warrant, order, judgment, or decree, shall be void to all intents and purposes whatsoever." [Clay's Dig. 593.] It is clear that there is nothing in this statute, if literally interpreted, which prohibits a court from receiving the verdict of a jury on Sunday. The case of Nabors v. The State, 6 Ala. Rep. 200, is clearly distinguishable from the present. There the question was, whether, if the term of a Circuit Court is limited by law, to one week, it does not expire on 12 o'clock of Saturday night, so that a verdict returned after that hour, though the case was submitted previously to a jury, is void? Both branches of this inquiry were answered in the affirmative. Perhaps there is a *dictum* added, intimating that no judicial proceeding done on the first day of the week, will be recognized as valid, this *dictum* is a reiteration of what had been said by others, and as a general proposition, we think is correct, even at common law. In Sayles v. Smith, 12 Wend. Rep. 57, it was said, that although such is the law, yet "all acts and

and transactions are lawful, done on the Sabbath, unless prohibited, either by the common law or by statute."

In Van Riper v. Van Riper, 1 South Rep. 156, Mr. Justice Southard said, "A judgment need in no case necessarily be rendered on the *Sabbath;* a verdict must in some instances be received on that day, or the jury be dismissed without receiving a verdict at all from their hands." *Again;* "It is a solemn duty, both of courts and juries, so to arrange their business, and so discharge their duties, as never to encroach in the smallest degree, on the *Sabbath,* if it be possible to avoid it; yet where the jury have been compelled to reach the morning of that day, before their verdict was prepared, I see no mode of proceeding so proper, as to receive the verdict, dismiss the jury and the parties, and at such future day as may be convenient and proper, take the subsequent proceedings. This must be done *ex necessitate.*" The learned Judge cites Pierse v. Lord Fauconberg, 1 Burr. Rep. 292. See also Regina v. Rosenberg and wife, 1 Brown's Justiciary Rep. 367, cited from 5 Kinne's L. Comp. 230.

Although by a statute of this State, petit jurors are to be drawn and summoned to attend a term of the Circuit Court for a single week, where it is of longer continuance, and talesmen are to be summoned for the day; yet there is no objection to their remaining beyond the week, or day, in attendance upon the court; and it is altogether proper to keep them in service for a longer period, where a cause has been submitted to them within the time, if they have not been able to agree upon a verdict before its expiration. The oath of a juror, summoned for the week, is, that he will well and truly try all issues, &c., which shall be submitted to him during the week, "and true verdicts render according to the evidence." And the same oath is administered to the tales jurors, substituting the word "day" for "term." [Clay's Dig. 455, § 27; 446, § 32; 458, § 56.]

In the case at bar, the term of the Circuit Court continued after the week, when the cause was submitted to the jury, and is thus distinguished from Nabors v. The State, *supra.* The case cited from 1 Southard, we think, lays down a reasonable and proper rule—the verdict was consequently regularly received by the clerk, according to the agreement of the par-

ties, on Sunday, and it was entirely competent to have rendered judgment thereon, any subsequent judicial day of the term.

This court has said, that "following what we conceive to be the best established practice, we are of opinion, that the court trying the cause ought not to grant a new trial for the causes embraced by a bill of exceptions, unless the party submitting a motion distinctly waives the exception. If however, the primary court make no such requisition of a party moving for a new trial, but allows his exception, and considers and overrules his motion for a new trial, the appellate court cannot refuse to consider the exceptions." [9 Porter's Rep. 104.] In the present case, the motion for a new trial was rested on other grounds than those upon which a reversal of the judgment is sought; so that the Circuit Court could not have required a withdrawal of the motion. But if the grounds had been identical, the case cited shows, that this court could not repudiate the bill of exceptions; it is for the primary court to put a party to elect whether he will avail himself of it and abandon his motion.

For the error in the first and second points considered, the judgment is reversed and the cause remanded.