Davis v. Fish.

## DAVIS v. FISH.

Where F. had delivered to D. two flat-boats on a contract previously made, D. proved that they were not delivered at the time, and were not of the quality required by the contract, and that he had incurred expenses in making the necessary repairs upon them; and then proposed proving that he had sustained damage by loading the boats with produce, which was injured in consequence of their defective construction, and also that he had sustained damage by depreciation in produce, by not having the boats in time; it was held that the facts proposed to be proved, were too remote and contingent to become the subject of damages under the contract; held also, that as D. received the boats, he was bound to pay whatever they were worth, and that he could not set up subsequent losses, growing out of the use to which he applied them.

The act of accepting the boats without complaint, and appropriating them to use, furnishes strong presumption of a waiver of all objection to their defective construction and delay in delivery.

Though work is improperly performed, and not within the agreed time, still if it is of use and value to the employer, the workman may recover reasonable compensation, after making such allowance as the circumstances may require.

If in such case, the employer can protect himself from damage by reason of defective or dilatory work, he is bound to do so if practicable at a moderate expense, or by ordinary efforts; and he can then charge the delinquent party for such expense and efforts, and the damages which could not be avoided by such diligence.

Where F. conveyed a claim and improvements to D., for one hundred and fifty dollars on account, and also for a steam engine of particular specification, but which was not delivered by D. to F. at the time and place agreed upon; it was held that as D. failed to deliver the engine as agreed, F. was entitled to the amount at its estimated value, that it would have paid, had it been deliv-

Davis *v.* Fish.

ered; but if no value was estimated upon it by the parties, that F. was enti-
tled to the value of the claim over and above the $150 applied on account.

After a jury retire to consider their verdict, and come into court for further in-
struction at an unusual hour, it is irregular to give such instruction in the
absence of a party or his counsel.

A verdict received, or a judgment rendered on Sunday, is void.

A judgment rendered after the last hour of the last day of a term as fixed by ·
law, is *coram non judice,* and void.

A term of court, fixed in a county for one week, commencing on Monday, will
expire on the following Saturday night at twelve o'clock.

ERROR, *to Wapello District Court.*

*Wright, Knapp,* and *Cowles,* for the plaintiff in error,
cited the following authorities as to instructing the jury, ren-
dering the verdict, and entering judgment on Sunday.
*Swan* v. *Broome,* 3 Burr. 1595; *Beclor* v. *Aepo,* Sir Wm.
Jones, 156; *McKalley's case,* 9 Coke, 66; *Pearce* v. *At-
wood,* 13 Mass. 324; *Hoghtaling* v. *Osborn,* 15 Johns.
119; *Butler* v. *Kelsey,* 20 *ib.* 178; *Story* v. *Elliot,* 8 Cow-
en, 27; *Frost* v. *Hull,* 4 New H. 158; *Chapman* v. *State,*
5 Blackford, 111; *Arthur* v. *Mozly,* 2 Bibb, 589; *Shaw* v.
*McComb,* 2 Bay, 232; *Nabors* v. *The State,* 6 Ala. 203;
*Baxter* v. *State,* 3 Gilman.

*J. C. Hall,* and *H. D. Ives,* for the defendant.

*Opinion by* GREENE, J.   Davis sued Fish in an action of
·assumpsit in the District Court, and obtained judgment.

On the trial, the plaintiff proved sales of goods to the de-
fendant to a large amount, and the defendant then proved
payments to a less amount.   Among the items of payment
were two flat-boats, delivered by the defendant to the plain-
tiff on contract.   In order to rebut the proof of payment to
the extent of these boats, the plaintiff proved that they were
not delivered at the time required by the contract, were not
of the stipulated quality, and that he incurred expenses in
making the necessary repairs upon them.   He then proposed
proving that he loaded the two boats with produce for the New
Orleans market, and in consequence of their defective con-

struction the produce was damaged, and also that by not having the boats in time he suffered. loss by depreciation in the price of produce in New Orleans. The defendant objecting to such evidence, the court ruled it out, and then charged the jury, that if they found the boats of less value for having been delivered after the time contracted, and for any defect in quality, or expense ·in repairing, they should deduct the amount from the contract price; that as the plaintiff received the boats, he was bound to pay whatever they were worth, and he could not set up subsequent losses, growing out of the uses to which he applied them. In this proceeding we think the court acted properly, or at least not adversely to the rights and interests of the plaintiff.

In regard to the greater price which might have been realized from the produce at New Orleans had the boats been delivered sooner, or as to the better condition of the produce had they been built better, we regard them as questions too remote, and as interests by far too contingent to be the subject of damages under the circumstances. If the boats were not made in the manner, nor delivered within the time required by the contract, the plaintiff was under no obligations to receive them; and he still would have had his remedy for damages against the defendant, commensurate with the injury sustained by his failure to comply with the agreement, but the act of accepting the boats without complaint and appropriating them to his own use, furnishes strong presumption, at least, of a waiver of all objections to their defective construction, and also to the delay in their delivery. Story on Bailment, § 441; *Everett* v. *Gray et al.*, 1 Mass. 101; *Jewell* v. *Schroeppel*, 4 Cowen, 564.

But the rule is settled beyond question, that if a job of work is of some use and value to the employer, or vendee, though improperly done, or not within the stipulated time, still the workman or vender is entitled to recover as much as the work is reasonably worth, making such reasonable allowance as the circumstances may require. *Linningdale* v.

*Livingston*, 10 Johns. 36; *Jewell* v. *Schroeppel*, 4 Cowen, 564; *Harrington* v. *Stratton*, 22 Pick. 510.

In connection with this point it may be appropriately observed, that in case of a breach of such specific contract, if the injured party can protect himself from damage, he is bound to do so if practicable, at a moderate expense, or by ordinary efforts; and he can charge the delinquent party for such expense and efforts only, and for the damages which could not be prevented by the exercise of such diligence. *Locke* v. *Davis*, 17 Pick. 284; 2 Greenl. Ev. §261.

In the case at bar, much of the direct and immediate injury complained of might have been easily remedied or avoided by the plaintiff; and we think it must be conceded that the court ruled properly in excluding the evidence of remote and speculative damages; and rightly instructed the jury, that any expense in making the boats equal to contract stipulations might justly be reduced from the price. In thus assessing the damages, the worth of the boats at the time of their delivery and acceptance, might be very correctly determined.

2. It is also contended that the court erred in charging the jury relative to the value of a claim and improvements on the public lands, which the defendant had sold, and conveyed by quitclaim deed, to the plaintiff for one hundred and fifty dollars on account, and also for a steam engine of particular specification, and which was to have been delivered to the defendant, but was not, upon demand being made at the time and place agreed upon. Evidence was given tending to show the value of the claim and engine respectively, and also of the estimate placed upon them by the parties in making the contract.

The court instructed the jury that if the plaintiff failed to deliver the engine as agreed, they should allow the defendant the amount that it would have paid had it been delivered; and that if the parties in making the contract estimated the value, that should govern their assessment; but if no price was fixed upon it, they should allow the

value of the claim over the $150, paid on account. To this charge we are unable to see any legal objection or injustice in the method directed, for arriving at the balance due on the claim. We think the mere statement sufficiently develops the correctness of the charge without argument or reference to authorities.

3. The next error assigned involves the propriety of charging the jury in the absence of counsel engaged in the cause. It appears by the bill of exceptions that the case was submitted to the jury late on Saturday night, and early on Sunday morning they came into court, asked for and obtained further instructions in the absence of the plaintiff and his counsel. Aside from the impropriety of holding court, or in any way adjudicating a cause on the Sabbath day, we think the court acted incorrectly in giving instructions to the jury during the absence of plaintiff's counsel, even though they did not materially vary, in the estimation of the judge, from those previously given in presence of the parties. During the charge to a jury the presence and attention of counsel, or of the party conducting the trial, are at least as important as they are at any other proceeding in a cause. And when courts are in session upon business days and within usual hours it is customary and proper to extend some indulgence, and make some effort, by at least a call at the door, to secure the presence of a defaulting party or of an absent counsel. But when a court meets at a time so unusual and without notice to parties it is manifestly improper, and might work oppressively, to proceed in so important a matter as that of charging a jury without the knowledge or presence of a party or of his counsel.

4. The fourth error to be considered is, that the court received the verdict and rendered judgment on Sunday. The principle is well settled and recognized by all the courts that at common law no judicial acts can be done on Sunday; but other acts not pertaining to the administration of justice are lawful unless prohibited by statute. In this case the final charge to the jury, their verdict, and the judgment,

were given and rendered upon the Sabbath day, and being in legal contemplation judicial acts, we can but consider them utterly void.

By all authorities Sunday is represented to be *dies non juridicus.* It was made so in the year 517, by a canon of the church, and adopted as the law of the land by the Saxon kings of England ; and having been confirmed by William the Conqueror, and Henry II, was fully established as a part of the common law. Decisions in the English books are uniform in pronouncing all judicial proceedings performed on Sunday as unlawful and void, *Swann* v. *Broom*, 3 Burrow, 1595 ; and they appear to be sustained with almost equal unanimity by the American courts.

In *Story* v. *Elliot*, 8 Cowen, 27, it was decided that an award made on Sunday, and all judicial acts, are void: and so was held the act of serving a notice of a motion in *Field* v. *Park*, 20 John. 140.

In *Butler* v. *Kelsey*, 15 John. 177, the jury were empanneled on Saturday, and heard the allegations and evidence before 12 o'clock at night, still it was decided that they could not assess the damages nor deliver their verdict after that hour on Sunday. But it was decided in the case of *Hoghtaling* v. *Osborn*, 15 John. 119, to be proper to receive the verdict, presuming the jury were empanneled before Sunday commenced ; but that it was illegal to enter the judgment on that day, and for that cause it was reversed. This decision appears to have been made without much deliberation or research. We think the reason of the common law and the current of authorities are strong against the legality of a verdict either made or received on Sunday. Such acts are clearly judicial, and should come under the prevailing and salutary rule that all judicial acts done on Sunday are void, unless expressly authorized by statute. The decision in the case of *Baxter* v. *The People*, 3 Gilman, 385, that a verdict of a jury may be entered of record on Sunday, but concluding it to be well settled that a judgment cannot be then entered, appears to have been made mostly

upon the authority of the slightly considered case of *Hogh-taling* v. *Osborn.* Is there any foundation in reason for this distinction? If the action of the court upon the judgment is inadmissible and void, is it not equally so, under the reason and spirit of the rule, for the court to act upon the verdict? The noble and enlightened objects of the laws forbid such a distinction. A day so sacred, set apart for rest by the voice of wisdom, experience, and necessity; a day established by laws both human and divine, for public worship and private devotion, should be held in especial veneration by legal tribunals. Courts of justice should at least, by their practice and decisions, maintain the sanctity of that time-honored, and heaven-appointed institution. This is but imperfectly done under the distinction and license entertained by the last two cases cited. The case of *Baxter* v. *The People,* discriminates between ministerial and judicial acts of courts, claiming that the latter cannot be done on Sunday, but that the former may. But does not the same objection, the same illegality or nullity as to time, the same desecration of the Lord's day, result as much from the one act as from the other? Necessity has been urged as a justification for this distinction, but we think there is for it, in that, as little foundation as there is in reason.

In *Haynes* v. *Sledge,* 2 Port. Ala. 130, a writ, which appears by its test to have been issued on Sunday, was adjudged destitute of legal force; and it was decided in *Pierce* v. *Hill,* 9 Porter, 151, that a levy of an execution on Sunday is void.

An arrest, made pursuant to a warrant issued on the Lord's day was held illegal, and the officer making it, a trespasser, in *Pearce* v. *Atwood,* 13 Mass. 324.

Indeed, the benign intention of the law can only be maintained by applying it to proceedings generally of courts; to acts ministerial as well as to those strictly styled judicial; observing such exceptions only as the General Assembly in their wisdom may see fit to provide.

5. But there is another objection raised to the verdict and

judgment in this case, which must render them as invalid in law as the error last considered. It is urged, and we must so decide, that the judge had no right to instruct the jury, receive their verdict, or enter judgment, after the last hour of the last day of the term of court, as fixed by statute. The term in Wapello county was limited to one week, commencing on Monday; and as it could not legally be held on Sunday, the term necessarily expired at the hour of twelve on Saturday night. All acts performed after the legal limitation of the term were *coram non judice* and void. *Nabors* v. *The State*, 6 Ala. 200; *Galusha* v. *Butterfield*, 2 Scam. 227; *Gregg* v. *Cook*, Peck, 82.

Judgment reversed.