[Jackson v The State.]

# Jackson v. The State.

*Indictment for Murder.*

1. *Hearsay evidence; inadmissible to show assumption of false name.* Where in a criminal prosecution the flight of the defendant and that he assumed and was known by a false name at the place to which he fled, are relied on as tending to show guilt, the assumption of a false name by the defendant can not be established by the testimony of the officer who arrested him that the postmaster at the place where he was arrested and another man told him that defendant went by a certain other name than his own at that place; such testimony being purely hearsay and inadmissible.

2. *Witness; evidence of character.*—A witness, whose general character and character for truth and veracity have been assailed, can not be sustained by evidence of an opinion of him based on the sustaining witness's individual dealings with him; the estimation in which a man is held in the community in which he lives, and not what he does, being the only proper predicate for the opinion of an impeaching or sustaining witness.

3. *General charge of the court.*—If separate parts of the court's general charge to which exceptions are reserved, when considered in connection with all that was said upon the subjects to which they relate, are free from error, the court will not be put in error.

4. *Charge to jury; reasonable doubt.*—In criminal prosecutions, charges to the jury that authorize the conviction of a defendant upon the mere belief by the jury of the facts necessary to establish his guilt, without requiring their belief to be beyond a reasonable doubt, are erroneous and should be refused.

5. *Same; killing one man thinking he was another.*—Where on a trial for murder, the evidence tends to show that the defendant, after having an altercation with one man, gets his pistol and looks through a crowd for him, and upon coming up to another man, whom he mistakes for the man he was hunting for, he shoots and kills the latter, charges as to the criminality of one whose blow, intended for and levelled at one man, falls on another, and which proceed on the idea that death resulted from a blow intended for one man but which fell by accident upon another, are inapplicable and abstract.

6. *Same; same.*—In such a case, if such tendency of the evidence truly presented the case, the defendant is to be tried and adjudged in all respects as if the man slain was the man sought; and charges which instruct the jury that the defendant should be acquitted if he was not at fault in bringing on the difficulty with the deceased, and

shot him in self-defense, when seeking a difficulty with the other man, are self-repugnant, confusing, misleading and erroneous.

7. *Same; ignoring the question of provoking the difficulty, and assuming retreat to be dangerous.*—On a trial for murder, an instruction to the jury that ignores the inquiry of fault *vel non* on the part of the defendant in the inception of the difficulty, and assumes that retreat would have been dangerous, is erroneous and properly refused.

8. *Same; self-defense.*—What constitutes self-defense is a question of law to be determined by the court; and an instruction to the jury which submits to them the determination of what is self-defense is erroneous and properly refused.

APPEAL from the District Court of Colbert.

Tried before the Hon. W. P. CHITWOOD.

The appellant was indicted and tried for the murder of one Will Harris, and was convicted of murder in the first degree, and sentenced to the penitentiary for life.

The testimony for the State, as shown by the bill of exceptions, tended to show that the deceased, Will Harris, and his brother, Ambrose Harris, who were strangers to the defendant, were at a dance where the defendant was; that during the dance Ambrose Harris interfered with the dancing, and when asked by the defendant not to interrupt them, he responded, "if you can't go around me, you must go through me;" that after the dance was finished, the defendant went to a table and picked up his pistol, and after walking back and forth in the room, holding the pistol aloft, he walked up to Will Harris, and immediately upon asking him, "Was it you?" shot the said Will Harris with his pistol, killing him. The testimony for the defendant tended to show that Ambrose Harris had a pistol, and that after the statement made by him to the defendant, the defendant got his pistol, and upon asking Will Harris if he was the man he was hunting for, the said Will Harris drew his pistol and levelled it upon the defendant, and that thereupon, the defendant fired the fatal shot. The defendant, as a witness in his own behalf, testified that he carried the pistol openly and hunted for Ambrose Harris; "not with any intention of having a difficulty with him, but to try to induce him not again to interfere with the dancing, and carried the pistol simply to defend myself [himself] in the event he assaulted me with the pistol," which he had.

The rulings of the court upon the evidence are suffi-

ciently stated in the opinion. Among the charges given by the court at the request of the solicitor, to the giving of each of which the defendant separately excepted, were the following: (1.) "If the jury believe from the evidence that the defendant entered into the fight willingly, or provoked or encouraged the difficulty, you can not acquit him." (2.) "If George Jackson provoked the difficulty which resulted in the death of Will Harris, or willingly entered into the fight, he cannot set up self-defense." (3.) "Even though the jury should believe from the evidence that George Jackson was looking for Ambrose Harris, still, if you believe from the evidence beyond a reasonable doubt that George Jackson did or said anything when he came upon Will Harris, which was calculated to provoke or encourage a difficulty with Will Harris, and a difficulty followed, in which George Jackson killed Will Harris, then the defendant can not be innocent." (4.) "Even though the jury should believe from the evidence that George Jackson was in imminent peril, real or presently apparent, of loss of life or limbs, and that it was necessary for him to shoot to keep Will Harris from shooting him, still you can not acquit defendant if you believe he provoked or encouraged or brought on the difficulty." The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each as asked: (1.) "If an assault be made by a deadly weapon, and was open and direct and in perilous proximity, then the law does not require the accused to endanger his safety by attempted flight." (2.) "If the jury believe from the evidence that defendant did not provoke or bring on a difficulty with Will Harris, but was seeking a difficulty with Ambrose Harris, that Will Harris presented at defendant a pistol in dangerous proximity to him in such a manner as to indicate to a reasonable mind that his purpose was to fire, the defendant was authorized to anticipate him and fire first." (3.) "The law does not require the impossible of any person; and if from the evidence in this case you come to the conclusion under the law as I have given you in charge, that the defendant did not provoke or bring on the difficulty with the deceased, but that deceased presented a pistol at his person a few feet dis-

tant, then the defendant had a right to act an appearances, and if they indicated to a reasonable mind great danger to life or limbs, and that by retreating his danger would be thereby increased, then the law would not require him to retreat." (4.) "If the evidence satisfies the jury that George Jackson did not provoke or seek a difficulty with Will Harris, but at the time he was seeking a difficulty with Ambrose, still the jury must acquit the defendant, if under the evidence and the law, as I have charged you, he shot Will Harris in self-defense." (6.) "Gentlemen of the jury, the rule of self-defense is, that persons may and must act on the reasonable appearance of things; the law of self-preservation does not require a person menaced with a deadly weapon to wait until it is fired at him before striking in self-defense, the danger must be real however, or so manifestly apparent as to create a reasonable belief of present impending peril to life or limb, and the accused must not have been instrumental in provoking or bringing it on." (9.) "Gentlemen of the jury, if you are satisfied from the evidence, that the defendant was without fault in bringing on the difficulty with Will Harris, and that he shot him in self-defense, you should find him not guilty, even though the evidence should satify your minds that he was, at the time, seeking a difficulty with Ambrose Harris." (10.) "Gentlemen of the jury, if the evidence satisfies your minds that the defendant was at the time of the killing, seeking a difficulty with Ambrose Harris, and not with deceased, that the deceased, without cause, made a demonstration and presented a pistol at the defendant, under such circumstances as indicated an intention to take his life, that the defendant was without fault in bringing on a difficulty with deceased, then the defendant had a right to shoot in self-defense, if there was no reasonable mode of escaping open to him." (11.) "Gentlemen of the jury, the fact, if it be a fact, that the defendant was seeking a difficulty with Ambrose Harris, did not deprive him of the right to shoot in self-defense, if feloniously assaulted by Will Harris." (15.) "If the jury believe from the evidence that the defendant, at the time of the killing, had the intention and formed design of taking the life of Ambrose Harris, but that he had no intention of harming the deceased, and was doing no act tending to bring on a difficulty with the de-

[Jackson v. The State.]

ceased, and with no intention of bringing on a difficulty with the deceased, and that the deceased drew and presented a pistol at defendant, under such circumstances as indicated that he intended to take his life, then the defendant had a right to fire in self-defense, if there appeared to him no reasonable made of escape.

J. B. MOORE, for appellant.—The facts of this case may constitute murder in the second degree or manslaughter, but they do not make out a case of murder in the first degree. The court erred in its charge authorizing the jury to convict of murder in the first degree. *Smith v. State*, 68 Ala. 424.

The 2d, 3d, 4th and 5th charges given by the court at the request of the State were erroneous, in that they did not require the court to believe the facts set out therein beyond a reasonable doubt.—*Jackson v State*, 77 Ala. 25 ; *Pierson v. State*, 99 Ala. 148 ; *Rhea v. State*, 100 Ala. 119 ; *Carr v. State*, 104 Ala. 4.

The 3d charge requested by the appellant sets forth every element of self-defense and should have been given. The 4th charge likewise should have been given. *Jackson v. State*, 77 Ala. 25; *DeArman v. State*, 71 Ala. 359 ; *Kirby v. State*, 89 Ala. 63 ; 1 Clark's Manual, § 356 ; *Oliver v. State*, 17 Ala. 587.

WILLIAM C. FITTS, Attorney-General, for the State.

McCLELLAN, J.—Flight of the accused and that he assumed and was known by a false name at the place to which he fled, Mullin's Station, Tennessee, were relied on by the State as tending to show guilt. To establish the fact of the assumption by him of a false name, the prosecution was allowed, against his objection, to show by the officer who arrested him at Mullin's Station that the postmaster at that place and another man told him, the officer, "that defendant went by the name of M. L. Jones, and received letters at the postoffice at Mullin's Station in the name of M. L. Jones." This testimony was so clearly the merest hearsay, and the ruling of the court allowing it to go to the jury was so obviously erroneous, that we deem it unnecessary to discuss it.

2. Some witnesses for the defendant having testified that they knew the general character of Steve Johnson,

a witness for the State, that it was bad, and that from their knowledge of his general character they would not believe him on oath, the State was allowed, against defendant's objection, to introduce the testimony of one Hastings to the effect that he knew Steve Johnson, had never heard his character discussed, but from dealings with him it was the opinion of the witness that Steve was worthy of belief, and he would believe him on oath. We do not think that a witness whose general character and character for truth and veracity is thus assailed, can be sustained by evidence of an opinion of him based on the sustaining witness's individual dealings with him. The inquiry goes to the witness's reputation, and the conclusion or opinion to be competent must be based upon the reputation in the community of the witness sought to be impeached. The question is not whether the witness's *conduct in his dealings* with one or more of his neighbors had been upright and that, of consequence, such persons would believe him on oath; character is not involved in this latter inquiry at all; and it is *character* and not *conduct*—the estimation in which a man is held, and not what he does—that is under investigation, and character only can afford a predicate for the opinion of an impeaching or sustaining witness that the witness inquired about is or is not worthy of credit. The testimony of Hastings stated above should, we think, have been excluded.— *Sorrelle v. Craig, Admr.*, 9 Ala. 534, 539–41; *Holmes v. State*, 88 Ala. 26; *Moulton v. State*, 88 Ala. 116.

3.  Those parts of the court's general charge to which exceptions were reserved when read, as they must be, in connection with all that was said upon the subjects to which they relate, are free from error, if indeed they are not so in and of themselves.

4.  Charges 1 and 4 given at the instance of the State were bad in that they authorize the jury to reach a conclusion of guilt upon their belief of certain facts, though they may not have believed them beyond a reasonable doubt.—*Carr v. State*, 104 Ala. 4; *Rhea v. State*, 100 Ala. 119; *Pierson v. State*, 99 Ala. 148.

5.  There was a tendency of the evidence to show that the defendant, having had an altercation with *Ambrose Harris* in a crowded room, went over to a table, got his pistol and, holding it aloft, passed back and forth through

[Jackson v. The State.]

the crowd several times looking for said Ambrose, and finally came upon *Will* Harris, a brother of Ambrose and much resembling him, when, supposing Will to be Ambrose, he shot and killed him. Intended to have reference to this tendency of the evidence, something is said in the court's general charge and in some of the charges refused to the defendant as to the criminality of one whose blow, intended for and levelled at one man, falls upon another. All this is outside the case. The fatal blow here was not levelled at Ambrose but at Will Harris, and upon Will Harris it fell. When the defendant fired the mortal shot his aim was upon Will Harris, and it was Will Harris whom he intended to kill. It is of no consequence that he might not have so intended and acted had he known that the man before him was Will and not Ambrose. If this evidence truly presented the case, the defendant is to be adjudged precisely as if Will Harris was the man he sought, and this not upon the theory that he tried to kill Ambrose and Will's death ensued through misadventure, but because the latter was the man he in fact intentionally killed. The only contrary evidence on this point is that of the defendant himself, going to show that he knew Will Harris, and intentionally shot him in self-defense. Charges, therefore, which proceeded upon the idea that death resulted from a blow intended for one and falling by chance upon another, were abstract.

6. Several of the instructions requested by the defendant and refused were to the effect that if the jury believed that the defendant "was not at fault in bringing on the difficulty with Will Harris," &c. &c., he should be acquitted. These charges tended to confuse the jury and mislead them to a disregard of the evidence referred to above as to the defendant's purpose and efforts in respect of Ambrose which he, upon the evidence for the State, carried out and visited upon the person of Will. If Will Harris stood to the defendant in the shoes of Ambrose, and the defendant seeking and provoking a difficulty with Ambrose found and shot Will, believing him to be Ambrose, it would be entirely misleading to confine the inquiry as to fault in provoking or encouraging or seeking a difficulty to what transpired at and immediately preceding the homicide between defendant and deceased, as the charges in question in effect do. More-

over, these charges are confusing in referring to the defendant's *seeking* a difficulty with Ambrose and not *seeking* one with Will. He may well have sought a difficulty with the man he killed mistaking him for Ambrose, and yet in a sense have been at no time *seeking* a difficulty with Will Harris. And again : If the defendant was seeking a difficulty with Ambrose in the manner shown by some of the evidence, *i. e.*, hunting for him after an altercation with him with a deadly weapon held up to view, this itself would be provocative of a difficulty with his brother, Will Harris ; and charges which assert, as do several of those refused to the defendant, in effect that the defendant, though thus seeking Ambrose, apparently to kill him, might still be without fault in bringing on the difficulty with Will, are inconsistent and self-repugnant, affirmatively bad when referred to one aspect of the evidence, and at the least confusing and misleading. All these requests for instructions were, therefore, properly refused.

7. Charge 1 requested by the defendant ignores the inquiry of fault *vel non* on his part in the inception of the difficulty, and assumes that retreat would have endangered him.

8. Several of defendant's charges which were refused are bad in that they leave it to the jury to determine what is self-defense—a question of law for the court.

Some questions other than those covered by the foregoing opinion are presented by this record ; but the ruling of the court upon them was either correct, or they are such questions as will not arise upon another trial.

Reversed and remanded.