Opinion of the Court.

[No. 1741.]

IN THE MATTER OF A. J. MAESTRETTI, FOR DISBARMENT.

DISTRICT AND PROSECUTING ATTORNEYS — MISCONDUCT — UNWARRANTED CRITI-
CISM OF SUPREME COURT—SUSPENSION.  A prosecuting attorney in his
argument before the supreme court in a homicide case stated that the
evidence showed that accused at the time he killed decedent meant to
kill another.  The court stated in its opinion that the evidence showed
that such was the fact.  Subsequently the prosecuting attorney stated
in the district court that there was nothing in the record warranting
the supreme court in saying that accused when he killed decedent
intended to kill another.  He admitted that his statement was not
true, and that the opinion of the supreme court correctly stated the
facts, and attempted to justify his statement before the district court
because of adverse criticism based on his conduct in the case.  *Held*,
that the prosecuting attorney was guilty of misconduct warranting
his temporary suspension.

PROCEEDINGS for the disbarment of A. J. Maestretti, an attorney.  **Judgment of suspension awarded.**

The facts sufficiently appear in the opinion.

*R. C. Stoddard*, Attorney-General, for Affiant.

*Campbell, Metson & Brown, Campbell, Metson, Drew, Oatman & McKenzie, W. B. Pittman, Charles Lewers*, and *Bartlett & Thatcher*, for Respondent.

PER CURIAM:

The facts upon which this proceeding was based are very fully set forth in the opinion rendered in the proceedings against Peter Breen for disbarment (30 Nev. 164), to which opinion reference is made for a more complete understanding of this case.  In response to the citation, respondent filed an answer, in which he admitted making the statement attributed to him at the time and in the manner charged in the citation. For convenience of consideration the statement of respondent in question is here repeated: "If it please the court, at this time I wish to rise to the question of privilege in relation to a statement made in the disposition of this case, wherein it was reversed in the supreme court, and that is this: In its decision the supreme court has stated in substance that the theory of the prosecution in this case was that Dwyer killed Williams through mistake, while looking

for a man named O'Brien with whom the defendant had had trouble during the day over a prostitute. I wish to state at this time that that is absolutely not the fact; further, that there is nothing in the records from the first page to the last which suggests, or would warrant, the supreme court in making such a statement in its decision, and where anything is shown on that record upon which the supreme court renders such a decision is beyond my understanding." The answer of respondent avers, however, that he did not know at the time he made the statement that Judge Breen was going to order it spread upon the minutes, and had nothing to do with the making of such order. He further avers that he had no intention of being contemptuous in his said remarks. From the answer of respondent we quote the following extracts: "When this decision was rendered, * * * the essential points were copied in the *Austin Reveille* and printed there, leaving out all of those affidavits that were cited and the testimony on the question of venue, and some parties had suggested to me: 'Was that your theory? Was that what you tried to prove in the case, that Dwyer killed Williams through mistake while hunting for O'Brien?' And, of course, it is very hard to explain to an ordinary citizen some legal matters, and that being my intent to prove that Dwyer had the intent to commit a felony, to show his state of mind, is why I made that statement in the district court in Austin. I do not deny that I made it. I believe those are the words I used. It was not made, notwithstanding the language might . be contemptuous in itself—it certainly was not made with any spirit of contempt whatever. * * * During the conduct of the trial of the case, I did not want to prove mistake. They, the defense, relied solely on the defense of temporary insanity, and this was the thing that presented itself to my mind: The statute, I believe, in substance, says that, where the killing is proven, the burden of justification or excuse lies on the defendant. I felt that if I proved that Dwyer killed Williams and simply proved that, and let it stand, that I might have had a conviction of some kind or other, but with that bare proof, the bare fact, without proving that

he intended to commit murder, would not have given me a verdict of murder in the first degree. I believe that Dwyer killed Williams by mistake. I know that he had nothing against Williams. I think the record shows that he did not know Williams, and had not seen him before. The only inference you can draw from the record is that he killed him [Williams] by mistake. * * * I had no consultation at all with General Stoddard until I came to Carson City two or three days prior to the argument, and I remember that we discussed the fact that the theory of mistake had not been raised by the defense, and that it would be well to submit that to the court in the event that they considered that phase of it; that is the substance of it. We discussed the proposition whether or not mistake could be murder in the first degree, and the cases we looked up support the contention that a conviction under such circumstances could be murder in the first degree. I believe there was ample justification from the record for the court to have made the statement that it did in its opinion, because any lay person, and I presume any lawyer or judge, after reading the thing over thoroughly, would come to the conclusion that Dwyer killed Williams while looking for O'Brien. At the same time I never prosecuted directly on that theory. That question never was raised as an issue in the case. * * * At the time I made the remarks in the lower court I had read the opinion attached to the remittitur. I understood then, and do now, that the case was reversed solely upon the point of the change of venue, and that the theory of the prosecution had nothing to do with the determination of the case on appeal—that it was just an incidental matter."

Upon the oral argument in this court of the case of the *State* v. *Patrick Dwyer*, 29 Nev. 421, respondent made the following statement: "There is one point I did not intend to touch upon, but I have been requested to do so and in examining the record the court will find, and I suppose that is the reason the objection is taken, that the feeling or intent to take life was not as to Williams, but as to O'Brien, and that the killing of Williams, it will be discovered by this court, must have been an accident, that Dwyer meant to get

O'Brien, and not Williams, and upon that point we have collected a few authorities which we wish to call to the attention of this court: *Jackson* v. *State*, 106 Ala. 12, 17 South. 33; *McGehee* v. *State*, 62 Miss. 772, 52 Am. Rep. 209; *People* v. *Torres*, 38 Cal. 141; 21 Am. Ency. Law, 104, 105."

It appears from the answer of respondent, from the argument made by him in this court upon the appeal in the Dwyer case, the brief of the attorney-general, as well as from the record in the latter case itself, that the statement made by respondent in the district court at Austin was wholly unjustifiable and contrary to the facts. It was this statement apparently which prompted the trial judge to make the offensive remarks and order considered in the proceedings against Peter Breen. It may be conceded that respondent at the time he made the remarks in question did not anticipate that they would have the effect which they did. We cannot, however, overlook the fact that respondent made, to say the least, a deliberate misleading statement in open court concerning an opinion of this court, which conduct upon his part, under all the circumstances, was a breach of professional propriety. Respondent's remarks did not, however, contain any offensive or insulting language. Upon issuance of citation, and before it reached Austin for service, respondent promptly appeared and filed an answer frankly acknowledging his error, and has manifested a commendable disposition to correct the same so far as in his power lies.

Judges, juries, prosecuting attorneys and lawyers generally, in the performance of their sworn duty, are frequently obliged to place themselves in opposition to public opinion, and when such occasions arise ought to be fearless in upholding the right as they see it. The cool, deliberate, and dispassionate proceedings of courts are better calculated to reach a just judgment than is public opinion, which, whether based upon press reports or not, is necessarily largely controlled by hearsay evidence, which is often partially, and sometimes wholly, unreliable. Considering the stress under which the respondent made the statement in the district court which was contrary to the argument he made, and the position he had taken in this court regarding the theory of mistake, his

prompt appearance and disavowal of any intention of being contemptuous, his frank confession of error, and his manifest willingness to correct the same as far as in his power lies, we are not disposed to inflict any severe punishment; but by way of reprimand and as a warning it is the order of the court that he stand suspended from practice in all the courts of this state for the period of thirty days from the date of the filing of this opinion, this suspension not to apply to his official duties as district attorney.