## BROWN ET AL. *vs.* THE STATE.

[INDICTMENT FOR DISTURBING RELIGIOUS WORSHIP.]

1. *Religious worship, disturbance of ; what necessary to constitute offense of under section 3612 of Revised Code.*—To constitute an offense under section 3612 of the Revised Code, for disturbing religious worship, there must be not only an actual interruption or disturbance of an assemblage of people met for religious worship, by noise, profane discourse, rude or indecent behavior, or by some other act or acts of like character, at or near the place of worship ; but such interruption or disturbance must also be *willfully* made by the person or persons accused. The intent of the parties is of the very essence of the offense, and to

be *willful* it must be something more than mischievous—it must be in its character vicious and immoral.

2. *General good character; must refer to time before commission of offense.* In such a case, evidence of general good character must have reference to a time before, and not after the act or acts complained of were committed ; and when the defendant has voluntarily put his character in issue by introducing evidence of his general good character, the State, even on cross-examination, can not inquire into the defendant's character subsequent to the time the offense charged was committed.

3. *Section 3612 of Revised Code; meaning of word "interrupt," as used in; what improper definition of.*—A charge given by the court, of its own motion, that "the word 'interrupt,' as used in the statute under which the defendants are indicted, means anything done by the defendants, or any other persons, which takes the attention of the hearers away from the services, or discourse of the minister," is erroneous. The meaning of the word 'interrupt,' as here given, is too general and inapplicable, and the tendency of the charge was to mislead the jury.

4. *Charge to jury; what erroneous.*—A charge that instructs the jury that "although the evidence might fail to show that all the defendants engaged in a conversation in the church yard, so near as to create an interruption or disturbance of a portion of the assemblage of people in the house, yet if they stood by, thus encouraging others, by their presence, to talk, that such would be as guilty as though they had engaged in the conversation themselves," is an improper charge, and calculated to mislead the jury, as it does not require it to be shown that there existed any combination, or common purpose, to make an interruption or disturbance.

5. *Section 3612 of Revised Code; what proper charge on indictment under.* A charge that instructs the jury that " they must believe from the evidence, beyond all reasonable doubt, that there was a *willful* interruption or disturbance of a congregation of people met together for religious worship ; and that they must also believe from the evidence, beyond all reasonable doubt, that such disturbance was caused by noise, profane discourse, rude or indecent behavior, or some other improper act, at or near the place of worship, intentionally performed by the defendants, before they can find them guilty ; and if the jury believe that such act or acts were performed heedlessly or recklessly, that is, carelessly, or without thinking of the probable consequences of such act or acts, then the jury should return a verdict of not guilty"— states the law correctly, and to refuse to give it, when asked in writing, is an error for which the judgment will be reversed.

APPEAL from Circuit Court of Henry.
Tried before Hon. J. McCALEB WILEY.

The appellants, Burrell Brown, William Ashley, William Weems and Wesley McKissock, who were jointly indicted

under section 3612 of the Revised Code for disturbing religious worship, went to trial on plea of not guilty, were found guilty, and fined.

From the bill of exceptions taken on the trial, it appeared that when a portion of the congregation had assembled for public worship at Sale Chapel, in Henry county, but before service commenced, the appellants came by on horseback, at a gallop, some fifty yards from church, and just then appellant Weems, who had been riding behind, and was just catching up, called out to the others : " You have been ahead of me all night, but damned if I am not up with you now." When they went through the church yard they checked the pace of their horses. Afterwards they came into the church, and one of the defendants laid down on a " ricketty bench," which made a noise every time he moved, but this attracted no particular attention. Shortly after this all the defendants walked out, asking a witness named Cole to go with them, and Cole had some conversation in a low tone, near the church, with defendants, and soon afterwards appellants came in and took seats as before, remaining until the congregation was dismissed.

While the appellants were outside the church some loud talking was heard, which disturbed some of the congregation, and which ceased when they returned. No witness recognized any of the parties talking outside except the appellant Brown, although there were five or six in the crowd ; and while they were outside some one threw a bottle against a tree, or something making a like noise, and this frightened a lady witness, who, as she testified, thought a pistol had fired. The appellants had a bottle, and some of them had been drinking. Rev. Mr. Holderberry, the minister holding service, testified that the conduct of defendants on the aforesaid Saturday and Sunday nights was so disorderly that he called in his appointments at that place, and ceased to preach there for a while.

This was in substance all the evidence tending to show the guilt of appellants ; and on the part of the defense several witnesses were introduced, who testified that they

were not disturbed; that the talking outside was very low, and did not disturb the meeting, &c.

The defense then introduced successively two witnesses, who testified that they knew the character of defendants, &c.; that their character was good, and that they were peaceable young men, and witness had never heard of their being charged with disturbing religious worship before the present indictment was found.

On cross-examination, the solicitor for the State asked these witnesses if they had not heard that defendants disturbed the congregation at Sale Chapel the next day after the alleged disturbance for which they were indicted. The defendants objected to the question, upon the ground that evidence of character should be confined to the time of the commission of the act for which they were indicted, and anterior thereto. The court overruled the objection and allowed the witnesses to answer, and the defendants excepted.

One witness then stated, in substance, that he was at Sale Chapel the next day (Sunday) after the commission of the alleged offense for which defendants were indicted, and heard a cow bell at the time referred to, and had heard that defendants had caught a cow by the tail up the road, and disturbed the congregation thereby, but it did not disturb him. The other witness stated the same thing in substance.

The defendants introduced a witness, who testified that the cow which was caught by the tail was two hundred and fifty yards from the church; that the cow jumped out of the road, and Ashley's hold was jerked loose at once. When the cow jumped off, the bell made some noise. Two of the defendants, Brown and Weems, were not present when the cow was caught by the tail.

This was substantially all the evidence. And thereupon the court, of its own motion, charged the jury that "the word 'interrupt,' as used in the statute under which the defendants are indicted, means anything done by the defendants, or any other person, which takes the attention of the hearers from the services, or discourse of the min-

Brown et al. v. The State.

ister." The defendants excepted to the giving of this charge.

The court also charged the jury that " although the evidence might fail to show that all the defendants engaged in the conversation in the church yard, so near as to create an interruption or disturbance of a portion of the assemblage of people in the house, yet if they stood by, thus encouraging others to talk, that such would be as guilty as though they had engaged in the conversation themselves."

The defendants excepted to this charge.

The defendants asked the following written charges :

1. " That the jury must believe from the evidence, beyond all reasonable doubt, that there was a willful interruption and disturbance of a congregation met together for religious worship ; and that they must also believe from the evidence, beyond all reasonable doubt, that such disturbance was caused by noise, profane discourse, rude or indecent behavior, or some other improper act, at or near the place of worship, intentionally performed by the defendants, before they can find them guilty ; and if the jury believe that such act or acts were performed heedlessly or recklessly, that is, carelessly, or without thinking of the probable consequences of such act or acts, then the jury should return a verdict of not guilty."

2. " That if the evidence shows that there was no talking near the church door and in the church yard near the church, until the defendants Brown, Ashley, Weems and the witness Cole went out, and that there was no talking of a disturbing character after they came in, and that while they were out, a bottle was thrown against a tree some eighty yards off, and broken, creating a loud noise, these are circumstances against defendants ; but if this circumstantial evidence is inconclusive, or if they can account for the existence of such circumstances on any reasonable hypothesis consistent with the innocence of defendants, they must do so ; and before they can find all the defendants guilty of disturbing the assembly, they must believe, beyond all reasonable doubt, that each one of them participated in doing the act which created

the disturbance; and before they can find any of the defendants guilty, they must believe from the evidence, to a moral certainty, that such defendant intentionally did the act or created the noise which disturbed the congregation, knowing at the time that such noise or acts were calculated to disturb; but if done carelessly or thoughtlessly, and not pursuant to design, they must find the defendants not guilty."

3. " That the word 'interrupt' means stopped, hindered from proceeding, and as used in section 3612 of the Revised Code, under which the defendants are indicted, it means a stopping or hindering the progress of such worshipping assembly in effecting the objects and purposes for which such congregation has assembled; and that an interruption which merely breaks the chain of thought, or which merely attracts the attention momentarily of a portion of such assembly, is not an interruption of such worshipping assembly within the meaning of said section of the Code."

The court refused to give any of the charges asked by the defendants, and they severally excepted, and now bring the case here by appeal, and assign as error that the court below erred—

1st. In allowing defendant's witnesses to be cross-examined as to hearsay of particular acts of appellants subsequent to the commission of the offense for which they were indicted, in order to rebut proof of good character.

2d. In the charges given the jury.

3d. In refusing to give the charges asked by appellants.

W. C. OATES, for appellants.—1. It was competent for the appellants to prove on the trial their general good characters up to the time of the alleged commission of the offense.—*Felix v. The State*, 18 Ala.; *Rosenbaum v. The State*, 33 Ala.

The circuit court erred in allowing the State to prove by hearsay that appellants disturbed the congregation at the same church the next day. The State is permitted to rebut the evidence of good character, even by particular acts

of bad character, committed before the alleged commission of the offense, but not after.—3 Greenl. Ev. § 25, 1; *Felix v. The State*, 18 Ala. But there is no authority for proving by hearsay a subsequent rumor of an act derogatory to their good character.—Roscoe Cr. Ev. 97; 2 Russell, by Greams, 786; 2 Phil. E. 490, 8th ed.

2. The charge of the court to the jury defining the meaning of the word 'interrupt,' as used in the statute under which the defendants were indicted, was latitudinous, and most clearly erroneous. The word 'interrupts' is not a word of technical meaning, hence it is to receive a construction according to its usual and popular sense. In that sense the legislature used it in section 3612 of the Code. It means " *hindered, stopped from proceeding.*"—See Webster's Unabridged Dictionary, title INT. " *Interrupt— To stop or hinder by breaking in upon ; to prevent from proceeding ; to disturb.*"—Worcester's Dictionary.

3. The second charge given to the jury by the court, *mero motu*, invaded the province of the jury, by assuming as a fact that all the defendants were present and encouraging, by their presence, others in talking in the church yard, to the disturbance of a portion of the worshipping assembly.—*Frank v. The State*, 27 Ala. 37; 17 Ala. 587.

4. Each and every one of the written charges which the appellants requested the court below to give to the jury, asserted correct legal propositions, and should have been given. To constitute the offense for which appellants were indicted, there must have existed in the mind of each one of them a specific intention to disturb the assemblage, provided we construe the statute by the necessity of its enactment and the history of its origin. It was unknown as an offense at common law. It is of statutory origin. It was enacted by the parliament for the protection of the dissenters, and was adopted by our own legislature, and in fact by nearly every State in the Union, to carry into effect the declaration of the constitutional right to worship God, each man according to the dictates of his own conscience. In its origin it was intended to guard worshipping assemblies from assaults and intentional interruptions by reli-

gious fanatics who were intolerant towards those differing
from them in religious notions and practices.   I am aware
that by the former decisions of this court, the statute
under consideration has received a somewhat broader con-
struction than I am contending for.   My construction is,
that although the inference of an intent to disturb is raised
by law, when the act done or noise created is of such a
nature or character as that a disturbance is the natural
consequence thereof, yet the presumption or inference thus
raised is traversable, disputable, and not conclusive; and
that unless the jury can say, upon a survey of the whole
of the evidence, that such intent existed in the minds of
the defendants when the act was performed which created
the interruption or disturbance, they can not in any case
find them guilty.

But in this case it is unnecessary to indulge in specula-
tions.   Tried by the adjudged cases, the charges which the
court below refused to give are correct legal propositions,
and puts that court manifestly in error by refusing the in-
structions as prayed by appellants.—*Harrison v. The State,*
37 Ala. 154.

ATTORNEY-GENERAL, *contra.*—1. The court did not err
*after* the accused had put their " characters in issue," in
permitting testimony showing their bad conduct as dis-
turbers of public worship, to be introduced.—*Harrison v.
The State,* 37 Ala. 154.   In such cases, *particular instances*
of improper conduct may be proven.—*Commonwealth v.
Moon,* 2 Dana 402 ; *Sacket v. May,* 3 Dana, 80.   And evi-
dence of bad conduct or character subsequent to the com-
mission of the offense may be given.—*Commonwealth v.
Sacket,* 22 Pick. 394 ; Rosc. Cr. Ev. p. 91, and notes.

2. Any noise *intentionally* made, which disturbed the
worship of the congregation, was a violation of the law,
and on proof of this fact the accused could be rightfully
convicted.—*Kurney v. The State,* 38 Ala. 224.

3. The charges asked by the defendants were properly
refused.   If the act was done by any one of the party en-
gaged in a common enterprise, all were guilty.—1 Bish.

Brown et al. v. The State.

Cr. Law, § 264; *Rey v. Sackett; The People v. Mather,* 4 Wend. 229, 255–56.

If the charges asked by defendants contained in each an incorrect proposition, although the remainder of the charge was correct, the court did not err in refusing to give it, or them.

PECK, C. J.—By section 3612 of the Revised Code it is provided that " any person who *willfully* interrupts or disturbs any assemblage of people met for religious worship, by noise, profane discourse, rude or indecent behavior, or any other act, at or near the place of worship, must on conviction be fined not less than twenty, nor more than two hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than one year."

To constitute an offense under this section, there must be not only an actual interruption or disturbance of an assemblage of people met for religious worship, by noise, profane discourse, rude or indecent behavior, or by some other act or acts of like character, at or near the place of worship, but such interruption or disturbance must be *willfully* made by the person or persons accused. The intent of the party or parties is of the very essence of the offense, and to be willful, it must be something more than mischievous—it must be in its character vicious and immoral. The evidence in this case is all set out in the bill of exceptions, and I have examined it carefully ; it is very indefinite and uncertain, and it seems to me barely sufficient to have put the accused on their defense.

This offense, if clearly proved, should be severely punished, but in doubtful cases, I am persuaded the cause of religion and the public good will be better subserved and promoted by suffering it to pass without the notoriety and excitements of a criminal prosecution. The best interests of religion are seldom, if ever promoted, by being too careful to mark what is done amiss.

We have discovered several errors in the record for which we think the judgment should be reversed. 1. After

the State had closed the evidence for the prosecution, the
bill of exceptions states that "the defendants then intro-
duced and examined one John Morris, who had been sworn
by the State, but not examined, who testified, in substance,
that he was acquainted with defendants, and knew their
general character ; that their characters were good ; that
they were peaceable young men.  He was then asked if
he had ever heard them charged with disturbing worship
*before this charge.*   He answered he had not.

    " The solicitor for the State then asked, on cross-exam-
ination, if he had not heard that they disturbed the con-
gregation at Sale Chapel church the next day after the
alleged disturbance for which they were indicted.   The de-
fendants objected to this question, upon the ground that
evidence of character should be confined to the time of
the commission of the act for which they were indicted,
and anterior thereto."   The court overruled the objection,
and allowed the witness to answer, and the defendants ex-
cepted.   The witness then stated that he was at said
church next day, on Sunday, after the alleged disturbance
on Saturday night before, and that he heard the cow bell,
but that it did not disturb him ; that he heard that defend-
ants had caught a cow by the tail up the road, and dis-
turbed the congregation thereby.

    This question was not a proper question to be asked,
even on cross-examination, because it referred to a time
different from that embraced in the defendant's question,
and because it referred to a particular act, and not to the
general character of the defendants.

    It is not permissible, in a criminal prosecution, for the
State to inquire into the general character of a defendant,
until he has voluntarily put it in issue, and then the in-
quiry must be confined to a time antecedent to the time
when the offense charged is alleged to have been com-
mitted.

    I am aware it has been held otherwise in Massachusetts,
in the case of *The Commonwealth v. Sackett,* 22 Pick. Rep.
394.   This, if not an isolated case, is not sustained by the
current of authorities, either text writers or reported cases

Wharton's Am. Cr. Law, 4th rev. ed., 636–38 ; Greenl. Ev. § 54 ; Bish. Cr. Pro. § 488–89, and the cases cited by these authors.

The State, against the defendants' objection, was permitted to ask a like question of several other witnesses examined by the defendants to prove their general good character, and defendants excepted.

2. After the evidence was closed, the court, of its own motion, charged the jury that " the word 'interrupt,' as used in the statute under which the defendants are indicted, means anything done by the defendants, or any other persons, which takes the attention of the hearers from the services, or the discourse of the minister." This charge is clearly erroneous. Its tendency was to mislead the jury, by withdrawing ·their attention from the essence of the offense, the intention of the defendants, and that the interruption or disturbance of the assemblage was wilful on their part.

The second charge given by the court is objectionable, for the reason that it makes the defendants that did not participate in the conversation alleged to have disturbed the assemblage, as guilty as though they had engaged in the conversation themselves. This could not be, unless the proof showed a combination or common purpose on the part of the defendants to do the unlawful act.

The first written charge asked by the defendants should have been given. It states the law correctly in regard to the character of the doubt that will entitle a defendant to an acquittal.—Bish. Cr. Pro. § 818–19. In the case of *Jane v. The Commonwealth*, 2 Met. (Ky.) Rep., Chief Justice Simpson says : " The evidence must be sufficient to produce a full conviction of guilt, to the exclusion of all reasonable doubt."

The second and third written charges asked by the defendants were properly denied. The third is by no means clear and perspicuous, but involved and complicated, and would no doubt have embarrassed and misled the jury. As courts are required to give written charges in the very

13

terms in which they are written, (Rev. Code, § 2756,) and are not permitted in any manner to explain or alter them, therefore, unless they are altogether right, they may be refused without error.

The third gives an incorrect meaning and application of the word 'interrupt,' as used in section 3612 of the Revised Code, and was rightly overruled for that reason. The offense may be committed, without necessarily stopping or hindering *the progress* of a worshipping assembly *in effecting the objects and purposes* for which such assembly has met together.

For the errors mentioned and pointed out in this opinion, the judgment of the court below is reversed, and the cause is remanded for another trial.