# Jackson v. The State.

*Indictment for Murder.*

1. *Local jurisdiction of offense committed near county boundary.*—By statutory provision, when a criminal offense is committed within a quarter of a mile of the boundary between two counties, either county has jurisdiction of it (Code, § 3720); and this provision is not violative of the constitutional guaranty of a speedy public trial, in all prosecutions by indictment, "by an impartial jury of the county or district in which the offense was committed."

2. *Same; Tennessee river as boundary between Madison and Morgan counties.*—This statutory provision has no application to offenses committed on the Tennessee river, where it constitutes the boundary between Madison and Morgan counties, and is more than a half mile wide; each county having jurisdiction of such offenses (Code, § 27; Clay's Digest, 595, § 13), to the margin of the river on the opposite bank.

3. *Evidence as to violent character of deceased.*—On a prosecution for murder, evidence of the violent character of the deceased is not admissible for the defendant, except when relevant to the question of self-defense; and that question does not arise, when he denies the commission of the homicide, and the evidence against him is entirely circumstantial.

FROM the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

The defendant in this case, Thomas Jackson, was indicted jointly with one Annie Fulcher, for the murder of William Youngblood, " by striking him with a stick;" was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of eight years. On the trial, as appears from the bill of exceptions, the State introduced evidence showing that, on the afternoon of Wednesday, June 25th, 1890, about four o'clock, the deceased, the defendant, and Annie Fulcher got into a skiff together at Whitesburg, and started down the river towards Decatur; that they were about a half-mile down the river when the witness last saw them;

that the empty boat, which was identified as Youngblood's, was found floating down the river about sunset; that the dead body of the deceased was found in the river, some distance below, on Saturday, the 28th June; "and the evidence tended to show that he came to his death by his skull being crushed by a round stick, no abrasion of the skin being shown." The witness who saw the empty boat in the river further testified that, on Friday, the second day afterwards, he went up the river from Lehman's Ferry to Whitesburg and back, and examined the banks on each side; that he found one place, and only one, where a skiff had landed, and this was on the Morgan county bank at White's Landing; that he there saw the tracks of three persons, one of which was a woman's, or small boy's, and the others the tracks of two men, one of whom had a club foot, such as the deceased had; that he also found there " a stick which had been but lately removed from where it had lain in the sand; that the tracks of a man led up to where the stick had first lain, then back to the boat, then back to within ten feet of where he found the stick, then up the river bank, and out through the fields." Another witness for the prosecution, who lived about two miles from the river on the Morgan county side, testified that the defendant and Annie Fulcher came to his house about sunset, on Wednesday evening, remained all night, and left together early the next morning. Another witness testified that, about nine o'clock Thursday morning, he ferried the defendant back across the river to the Madison side; and it was further shown that, on Saturday morning, when the body of the deceased was found, the defendant was on the river near by in a skiff, and came over on being called, and helped to bury it.

A witness for the defendant testified, that a loaded pistol was found on the body of the deceased, and that two bottles of whiskey were found in the boat, each partly empty. The defendant, testifying for himself, stated that the deceased was under the influence of liquor when they started from Huntsville to Whitesburg, and continued to drink on the way; that after they had gone some distance down the river, Annie Fulcher " got sick, and asked to be put off;" that they landed the boat on the Morgan side of the river, where the deceased first got out, and held the boat until she got out, followed by the defendant, who stopped to put on his shoes, and then followed her up the bank; and that the deceased called back to her, as he was pulling out into the river, to meet him in Whitesburg the next day. Annie Fulcher, as a witness for the defendant, it is stated, " corroborated his testimony as to these transactions." The defendant stated, also, that when the body was

[Jackson v. The State.]

discovered, he was going down the river in his boat, expecting to see the deceased in Decatur. It was admitted that the Tennessee river, at the point indicated, is 900 yards wide, " and that the murder, if committed at all, was committed on the bank of the river on the Morgan county side, or in the river;" or, as stated in another place, " on the river, or on its bank on the Morgan county side, within a few feet of the water's edge." On this evidence, the defendant made a " motion which was, in effect, a demurrer to the evidence, on the ground that the venue was not proved in Madison county as laid;" and he excepted to the overruling of his motion. The same question was presented by a charge asked and refused, and by the charge given by the court, as copied in the opinion of this court, exceptions being reserved to each of said rulings.

The defendant offered to introduce, also, " evidence by several witnesses of the character of said Youngblood, in the neighborhood in which he lived at the time of his death, for turbulence, violence, and bloodthirstiness, especially while drinking;" and he excepted to the exclusion of this evidence by the court.

Ed. Pulley, for the appellant.—(1.) Section 3720 of the Code is unconstitutional and void, so far as it attempts to give to the courts of one county jurisdiction of offenses committed in another.—*Armstrong v. State,* 1 Cold. Tenn. 338; *Alexander v. State,* 3 Heisk. Tenn. 381; *Tidwell v. State,* 70 Ala. 42; 43 Mich. 443; Cooley's Const. Lim., 392, 5th Ed. (2.) Admitting the constitutionality of that statute, it does not justify the charge of the court. At the point indicated by the evidence, the river is 900 yards wide, or more than a half-mile; and the offense was committed, if at all, within the limits of Morgan county. (3.) Evidence of the violent character of the deceased ought to have been admitted.—*Queensbury v. State,* 3 S. & P. 308; *Pritchett v. State,* 22 Ala. 39; *Fields v. State,* 47 Ala. 603; 1 Hawks, N. C. 210; 11 Amer. Rep. 776; *Monroe v. State,* 5 Geo. 85; *Hicks v. State,* 27 Miss. 588; *Smith v. State,* 12 Rich. S. C. 430.

Wm. L. Martin, Attorney-General, for the State.—(1.) By a statute of Alabama, which has been of force since 1820, jurisdiction of criminal offenses committed on a navigable river is committed to the counties on either side.—Code, § 27; Clay's Digest, 505, § 13. The Tennessee river, as the court judicially knows, is a navigable river. (2.) If section 3720 of the Code applies to the case at all, it extends the jurisdiction of the courts of Madison and Morgan counties, each, a quarter of

[Jackson v. The State.]

a mile beyond the margin of the river on the opposite bank. (3.) The constitutionality of this statute was assailed, but was upheld by this court, in *Hill v. State*, 43 Ala. 365, and *Grogan v. State*, 44 Ala. 1; and this construction has been incorporated in the constitutional provisions since adopted.—*Ex parte Roundtree*, 52 Ala. 42.

McCLELLAN, J.—The appellant was indicted, tried and convicted, in the Circuit Court of Madison county. The charge was murder, and he was convicted of manslaughter in the first degree. The killing of which the charge was predicated, occurred near the South margin of the Tennessee river, at a point where that stream is more than a half mile in width, and constitutes the boundary of Madison county on the North, and Morgan county on the South. The evidence of the *corpus delicti* was circumstantial, and left it in doubt whether the act charged was committed on the Morgan county bank of the river, or in the river and immediately contiguous to that bank; and the State's solicitor admitted on the trial, that "the murder, if committed at all, was committed on the bank of the Tennessee river on Morgan county side, or in the river." On this state of evidence and admission, the defendant requested the court to give the following written charge: "If the jury believe from the evidence that the murder, if committed at all, was committed on the Morgan county · bank, then this court does not have jurisdiction, and your verdict should be for acquittal." This charge was refused, and the jury, to the contrary, was instructed: "The North bank of the Tennessee river is the South boundary of Madison county. By act of the legislature, the river is the boundary between the counties of Madison and Morgan, and for the purposes of this trial, it is an imaginary line. So that, if the jury believe from the facts that the murder, if committed at all, was committed on the Tennessee river, or within a quarter of a mile of either bank, then this court and county have jurisdiction of the offense." Exceptions were duly reserved to the action of the court in respect to each of these charges.

Our opinion is, that the court erred in each instance. We do not question the constitutionality of the statute, which provides that "When an offense is committed on the boundary of two or more counties, or within a quarter of a mile thereof, or when it is committed so near the boundary of two counties as to render it doubtful in which the offense was committed, the jurisdiction is in either county."—Code, § 3720. The section of the Declaration of Rights, which was supposed to be contravened by this statute, came under construction in this con-

38

nection in the case of *Grogan v. State*, 44 Ala. 1; and the right to trial by an impartial jury of the county or district in which the offense was committed, thereby secured to persons charged with crime, was held not to be taken away or infringed upon by the statute. Whether this decision was sound, as an original proposition, is immaterial. Whether so or not, it served to impress a judicial interpretation upon the constitutional provision, which, upon its re-ordination by the Convention of 1875, without any modification indicating a repudiation of the construction thus put on it, became a part of the provision itself. *O'Byrnes v. State*, 51 Ala. 25; *Ex parte Roundtree*, 52 Ala. 42; *Ex parte Matthews*, 52 Ala. 51; *E. T., V. & G. R. R. Co. v. Bayliss*, 74 Ala. 150; *Ex parte Long*, 87 Ala. 46.

But section 3720 of the Code has no application to this case. Its manifest purpose is to avoid the difficulty of the definite location, with respect to county lines, of the scene of offenses. Recognizing that it might be impossible to determine, in a given case, whether the act charged was committed on one side or the other of a line, the precise location of which was not known to the witnesses, though they might, and usually would, know the approximate location of the boundary, the legislature has sought to obviate the difficulty by giving adjoining counties concurrent jurisdiction over a strip of territory a half mile wide, and extending a fourth of a mile each way from the boundary line. To this extent, and no further, the county or district within which offenses must be tried has been enlarged by this statute beyond what are the lines of the particular territorial division for ordinary governmental purposes.

The statute is of that character which ought not to be extended beyond its letter. Its purpose, moreover, does not require that it should be so extended in any case, even if it were an enactment in which express terms could be controlled by a general intent inferable from its subject-matter and context, which it is not. Every term it employs may be filled, and every purpose which actuated its passage may be fully effectuated, by confining its operation strictly to territory which is within one quarter of a mile of the actual boundary between two or more counties. It contains no exceptional provision with reference to the computation of this distance, where the bank of a stream constitutes the county line. There is nothing in its language, or in its purview, which would require or admit of the stream being considered a mere imaginary line of no width, or breadth, or substantive existence; or of the initial point of the computation being on the opposite side of the stream, and thus itself a quarter of a mile, or a mile, or ten, depending on its width, from the real and only county boundary.

[Jackson v. The State.]

On the contrary, we have another statute, bearing upon the matter of the territorial jurisdiction of courts, which recognizes and takes into account the territory covered by navigable streams, as we judicially know the Tennessee river to be, which are not included in the limits of any county, as is the case with that river between the counties of Madison and Morgan. This statute, which has been the law in Alabama since 1820—long before the enactment of section 3720 of the Code, which is new to the Code of 1852—provides, in its application to this case, that the counties of Madison and Morgan have concurrent jurisdiction over the Tennessee river, extending on the part of each to the water's edge opposite its own territory. Clay's Digest, 595, § 13; Code, 1852, § 24; Code, 1867, § 25; Code, 1876, § 27; Code, 1886, § 27. And it has never been questioned, and, we think, can not be, that territory constituting the beds of such streams, though lying beyond the county boundary, and extending beyond both the initial and final points of the one-fourth mile measurement contemplated in section 3720 of the Code, is a part of the county or district within the sense of section 8 of Article I of the Constitution, for all purposes of criminal administration. There would seem, indeed, to be no field for the operation of section 3720 on the south boundary line of Madison county, unless it be with respect to islands within a quarter of a mile of that line; but, however that may be, we are quite clear that it can not be so construed as to confer upon the courts of Madison county jurisdiction over offenses which were committed on territory of Morgan county, which is more than a quarter of a mile from the margin of the river on the Madison county side. In arriving at the limits of the extended jurisdiction, in other words, the width of the stream must be taken into the admeasurement. If the statutory distance extends beyond the stream, the territory on that side thereby embraced is subject to the criminal jurisdiction of both counties, because, while possibly not within the mischief intended to be remedied by the law, since there could be little room for uncertainty as to the location of a boundary so marked, yet it is within the letter of the statute. *Dickey v. State*, 68 Ala. 505. But, if the quarter of a mile falls short of the opposite bank, then the only law in the premises is section 27 of the Code, which carries the jurisdiction to the margin of the river—the boundary line of the opposite county—but not one foot beyond. Hence our conclusion, that the charge requested by the defendant below should have been given; and the charge which was given should have been refused.

[Griffin v. The State.]

There was no evidence in the case which proof of the violent character of the deceased would have illustrated. It was properly excluded.—*Rutledge v. State*, 88 Ala. 85; *King v. State*, at present term.

Reversed and remanded.