# Smith v. The State.

### Murder.

(Decided June 1, 1916. Rehearing denied June 30, 1916.
72 South. 316.)

1. **Evidence; Admissions of Defendant.**—Where the admissions were statements which were in no sense confessions, they were properly admitted without first laying a predicate therefor; such as statements by the wife, being prosecuted for the murder of her husband, as to the amount of money he had in his pockets, and as to other collateral matter.

[Smith v. The State.]

2. **Homicide; Evidence; Prior Difficulty.**—Evidence of prior difficulties, as to details, between the accused and deceased, so separated in point of time or circumstances from the act charged as not to constitute a part of the res gestae, are not admissible.

3. **Same.**—The fact of previous altercations or difficulties between deceased and defendant are admissible in a prosecution for murder, as tending to show malice, ill will or other motive for the killing.

4. **Same; Character of Deceased.**—Where there is testimony tending to show that defendant acted in self defense, evidence of the turbulent, bloodthirsty and dangerous character of deceased, is admissible, and is relevant for the purpose of shedding light on the killing.

5. **Same.**—Where there was no evidence of any overt act on the part of deceased which could reasonably cause defendant to believe that she was in danger of grievous bodily harm or death, and that she had no reasonable mode of escape, evidence as to the turbulent and bloodthirsty character of deceased is not admissible.

6. **Same.**—The turbulent and bloodthirsty character of deceased cannot be established by evidence of particular acts of violence, turbulence or bloodthirstiness on his part, but must be restricted to proof of his general character in such matters.

7. **Same; Character of Defendant; Time.**—Evidence as to the good character of defendant must be confined to the time of and prior to the alleged commission of the crime, and testimony as to the character of defendant, while confined in jail after the commission of the offense is not admissible.

8. **Witnesses; Impeachment; General Character.**—Where defendant testifies in his own behalf, the credibility of his testimony may be impeached by showing general bad character for truth and veracity up to the time of the trial, and if so impeached, defendant may sustain his character by evidence covering the period of time up to the trial, but such testimony must be carefully limited to the question of the credibility of defendant as a witness.

9. **Trial; Argument of Counsel.**—Under the evidence in this case the argument of the attorney for the state was clearly within the inferences from the evidence, and was not otherwise improper.

10. **Charge of Court; Burden of Proof.**—A charge asserting that the jury must believe defendant guilty beyond any and all reasonable chance of mistake before they can find defendant guilty, was properly refused.

11. **Same; Invading Province of Jury.**—A charge asserting that defendant was free from fault in bringing on the difficulty, was properly refused as invading the province of the jury.

12. **Same; Reasonable Doubt.**—Where the evidence gave rise to an inference or inferences of defendant's guilt, charges asserting that if they believe the evidence, the jury could not convict defendant, were properly refused.

13. **Same.**—Charges directing the jury to return a verdict of acquittal, if a single member of the jury had a reasonable doubt, growing out of any part of the evidence was properly refused.

14. **Same.**—Such an instruction was also improper as authorizing an acquittal on a doubt arising out of any part of the evidence, since the doubt that authorizes the acquittal is a doubt arising after a consideration of all the evidence.

[Smith v. The State.]

15. **Same; Form.**—It was not reversible error to refuse a charge asserting "it is your duty to acquit the defendant" unless the evidence excludes every reasonable supposition but that of her guilt, especially where it was fully covered by the charges given.

APPEAL from Tuscaloosa County Court.

Heard before Hon. HENRY B. FOSTER.

Ella Smith was convicted of murder, and she appeals. Affirmed.

Etta McCaney testified that she was the sister of the dead man, husband of defendant, and that the dead man came to her house, drunk, and lay down across the bed, and his wife sat by him and took a nickel and a knife out of his pocket. Witness was permitted to say that defendant told her: "When Will left me yesterday evening, he had 80 cents in his pockets."

After further testimony the witness stated that Ella Smith came to the kitchen and said she was going home, and asked witness if she would keep her child. The body was found on the bed dead, with a knife wound in the heart. The defendant offered to testify to certain difficulties, and to certain wounds and cuts received in the same between her and deceased, while they lived at Bessemer, and some time prior to the difficulty. The other facts sufficiently appear.

The following charges were refused to defendant:

2B. The court must believe the defendant guilty beyond any and all reasonable chance of mistake before they can find the defendant guilty.

2C. Under the evidence in this case, the defendant was free from fault in bringing on the fatal difficulty.

2D. If you believe the evidence in this case, you cannot convict defendant of murder.

2E. If you believe the evidence in this case, you cannot convict defendant of murder in the third degree.

2G. If you believe the evidence in this case you cannot find defendant guilty of murder in the second degree.

24. If you know a single member of the jury is in doubt of defendant's guilt, growing out of any part of the evidence in this case, then you must return a verdict of not guilty.

26. I charge you, that in this case it is your duty to acquit defendant, unless the evidence excludes every reasonable supposition but that of her guilt.

[Smith v. The State.]

HOWARD L. SMITH, for appellant. W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

THOMAS, J.—The defendant was convicted of murder in the second degree, and sentenced to the penitentiary for twenty-five years.

[1] (1) There was no error of the court in permitting the witness, Etta McCaney, to detail certain statements made by the defendant. They were all collateral matters and in no sense confessions of guilt, hence no predicate was required to be laid for their admissibility.—*Aiden v. State*, 35 Ala. 399; *McAdory v. State*, 62 Ala. 154; *Durrett v. State*, Id. 434; *Pentecost v. State*, 107 Ala. 81; *Love v. State*, 124 Ala. 82; *Meadows v. State*, 136 Ala. 67; *McGehee v. State*, 171 Ala. 19; *Watts v. State*, 177 Ala. 24; *Macon v. State*, 179 Ala. 6.

[2] (2) The lower court properly refused to allow the defendant to testify to the details of prior difficulties between herself and deceased. If so separated in point of time or circumstances from the act charged as not to constitute a part of the res gestæ of the act for which the prosecution is had, such matter is inadmissible.—*Garrett v. State*, 76 Ala. 18; *Rutledge v. State*, 88 Ala. 85; *Stitt v. State*, 91 Ala. 10; *Gordon v. State*, 140 Ala. 29; *Sanford v. State*, 143 Ala. 78; *Bluett v. State*, 151 Ala. 41; *Patterson v. State*, 156 Ala. 62; *Robinson v. State*, 155 Ala. 67; *Jackson v. State*, 177 Ala. 12; *Wells v. State*, 187 Ala. 1.

[3] It is permissible to prove the fact of previous altercations between the accused and the deceased, as tending to show malice, ill-will or other motive for the killing.—*Gray v. State*, 63 Ala. 66; *McAnnally v. State*, 74 Ala. 9; *Garrett v. State*, *supra; Stitt v. State*, *supra; Jackson v. State*, *supra; Wells v. State*, *supra*.

[4-5] (3) The defendant sought by the witness, Lucy Washington, to prove isolated and particular acts of violence, as tending to show that the deceased was a turbulent and bloodthirsty man. Evidence of the turbulent, bloodthirsty and dangerous character of the deceased is admissible, where there is testimony tending to establish that the accused acted in self-defense, where some overt act on the part of the deceased is shown, calculated to impress the slayer with the reasonable belief that he was in danger of grievous bodily harm or death, and that there was no

[Smith v. The State.]

reasonable mode of escape. This evidence is for the purpose of determining who was the aggressor. In the absence of such overt act on the part of the deceased, his character for violence and turbulence is not relevant.

In *Green v. State,* 143 Ala. 210, the foregoing rule was announced, that decision overruling the contrary doctrine of the case of *Fields v. State,* 47 Ala. 603. The ruling in the *Green Case* has been since followed in this state.—*Watson v. State,* 181 Ala. 53; *Perry v. State,* 94 Ala. 25, 30; *Roberts v. State,* 68 Ala. 156; 1 Jones on Ev., § 156.

Testimony showing the violent character of the deceased, on the issue of self-defense, is relevant for the purpose of throwing light upon the killing, the demeanor of the respective parties, the just apprehension of the accused.—*Green v. State, supra; Perry v. State, supra; Roberts v. State, supra; Storey v. State,* 71 Ala. 329; *Eiland v. State,* 52 Ala. 323; *Bowles v. State,* 58 Ala. 335; *Pritchett v. State,* 22 Ala. 39; *Quisenberry v. State,* 3 Stew. & Port. 314; 5 Ala. App. 294.

[6] The turbulent and bloodthirsty character of the deceased, however, cannot be established by particular acts of violence or turbulence or bloodthirstiness on his part.

The question propounded to the witness, to which objections were sustained by the court—whether witness "did not know that the deceased had cut or shot a man in Bessemer," and that deceased had been in trouble on account of "having cut or shot at more than one person in Bessemer"—were improper.—*Sorrelle v. Craig,* 9 Ala. App. 534; *Nugent v. State,* 18 Ala. 521; *Pritchett v. State,* 22 Ala. 39; *Franklin v. State,* 29 Ala. 14; *Dupree v. State,* 33 Ala. 380; *Jones v. State,* 76 Ala. 8; *Jackson v. State,* 78 Ala. 471; *Steele v. State,* 83 Ala. 20; *Bluett v. State,* 151 Ala. 41; *Jackson v. State, supra; Montgomery v. State,* 2 Ala. App. 25; 1 Greenl. Ev. (14th Ed.), § 55; 7 Mayf. Dig. 341-42; Bish. New Cr. Prac., 1113-14.

A witness may give his opinion of the character of the deceased for peace and quiet or for turbulence and violence, if he knew that character, where it appears to be based in part upon the estimate of such character in decedent's neighborhood.—*Roberson v. State,* 175 Ala. 15; *Dave v. State,* 22 Ala. 23; *Hadjo v. Gooden,* 13 Ala. 718. One may form an opinion of the character of another without hearing specific discussion or opinion of that character.

[Smith v. The State.]

[7] (4) The defendant having put her character in issue, sought to prove that since she was confined in jail for the murder of the deceased, Will Smith, her character had been good and she had been made a trusty by the jailor. This testimony was properly excluded. Such evidence of the character of the defendant must be confined to the time of, and anterior to, the alleged commission of the offense for which he is being tried. Testimony touching reputation founded on an opinion expressed post litem motam is inadmissible. The court properly refused to allow defendant's counsel to show what the character of the defendant was since she was incarcerated in jail on this charge of murder. —*Brown v. State*, 46 Ala. 175; *Griffith v. State*, 90 Ala. 583; *White v. State*, 111 Ala. 92; *Smith v. State*, 118 Ala. 117; *Gordon v. State*, 140 Ala. 29; *Ragland v. Smith*, 178 Ala. 59; *Foreman v. State*, 190 Ala. 22; *Robinson v. State*, 5 Ala. App. 45; *McGuire v. State*, 2 Ala. App. 131; 1 Starke on Ev., 319; 7 Mayf. Dig. 340; Underhill on Cr. Ev. (2nd Ed.), § 83. Evidence of defendant's good character while confined in jail under the charge for which he was being tried, was held not admissible in *White v. State*, *supra; Hill v. State*, 37 Tex. Cr. 415, 16 Cyc. 1278 (B); *Robinson v. State*, 5 Ala. App. 45.

In *Mitchell v. State*, 14 Ala. App. 46, 70 South. 991, Judge Brown correctly states the rule for the introduction of evidence of the good character of the defendant as follows:

"The character of the accused in this respect can be made an issue only by the accused offering proof of his good character, and when he does, the state may offer countervailing evidence of his general bad character in the respect in which it has been made an issue (*Smith v. State, supra*), or may, on cross-examination of the defendant's witness, show reports or rumors current in the community of defendant's residence before the alleged criminal act under investigation derogatory to his good character in the respect he has put it in issue, for the purpose of showing that the witness was mistaken in his estimate of defendant's character. * * *

"What we have said above applies only to character evidence admissible as exculpatory evidence. If the accused testifies as a witness, the credibility of his testimony may be impeached, like any other witness, by showing his general bad character; but in cases where the character of the accused in both respects is made an issue, to avoid impinging the principles above stated, the im-

peaching evidence, when requested by the accused, should be limited by the court to the purpose of impeaching the credibility of the witness.—*McGuire v. State,* 2 Ala. App. 219, 57 South. 57; *Byers v. State,* 105 Ala. 31, 16 South. 716; *Fields v. State,* 121 Ala. 16, 25 South. 726; *Sweatt v. State,* 156 Ala. 85, 47 South. 194."

[8] When the accused has testified as a witness, the credibility of his testimony may be impeached, like that of any other witness, by showing his general bad character for truth and veracity to the time of the trial. Of necessity, then, the defendant may likewise sustain his general character for veracity by evidence covering the period to the time of the trial. All such impeaching and sustaining character evidence must be carefully limited by the trial court to the question of the credibility of the defendant as a witness.—*Rains v. State,* 88 Ala. 91; *Cox v. State,* 162 Ala. 66; Wigmore, Ev., §§ 890, 891; 1 Greenl., Ev., 444b; *State v. Beal,* 68 Ind. 345; *State v. Efler,* 85 N. C. 585; *Fisher v. Conway,* 21 Kans. 18.

[9] (5) Defendant's counsel urges that a portion of the solicitor's closing argument to the jury to which due objection was made, and exception reserved—to-wit, "the defendant at the time of the killing was already violating the law, living in adultery with the witness as his concubine"—should have been excluded from the jury; and that the trial court's refusal to exclude was reversible error.

In the case of *Shelby Iron Company v. Greenlea,* 184 Ala. 496, Mr. Justice MAYFIELD for the court says: "The plaintiff introduced proof tending to show that there were sores on the bodies of his children, and that these sores were the result of mosquito bites. The defendant thereupon introduced proof by expert physicians that the sores were not caused by mosquito bites, but were syphilitic in character, and evidently proceeded from the condition of the blood of one or the other of the parents by transmission to the children. One of the physicians, Dr. Miller, testified that he treated the father of the children for this trouble. In the argument of the case to the jury, one of the plaintiff's counsel stated: 'That Dr. Miller's testimony ought not to be believed in this cause, as he had divulged confidential communications between him and his patient, the plaintiff, in regard to his condition, and that he had of his own volition come to the defendant's counsel, and divulged this, and was put on the

stand to testify, and that under the laws of the state of Alabama he had no right to testify, and it could have been excluded from the jury had objection to his testimony been made, and the law did not allow a physician to tell or state what took place between his patient and himself.' * * * This argument was wholly improper, and the trial court should have excluded it. Its natural tendency, if not its purpose, was to prejudice the jury. It contained statements of fact not supported by the evidence, and announced in court propositions of law, all of which were calculated to prejudice, and probably did prejudice, the jury."

It has been often held by this court that every fact the testimony tends to prove, and every legitimate inference that may be drawn from the facts in evidence, are proper subjects of discussion by counsel in their arguments to the jury. The rule is thus stated by Mr. Justice STONE, in *Cross v. State*, 68 Ala. 476: "In addressing the jury, counsel must be allowed to select and pursue their own line of argument, their own methods of dealing with the testimony. * * * Every fact the testimony tends to prove, every inference counsel may think arises out of the testimony, the credibility of the witnesses, as shown by their manner, the reasonableness of their story, their intelligence, means of knowledge, and many other considerations, are legitimate subjects of criticism and discussion. So, the conduct of the accused, his conversation (if in evidence), may be made the predicate of inferences, favorable or unfavorable. Analogies and illustrations may also be drawn, based on the testimony, on public history, [or] on science." These are legitimate subjects of discussion, and the presiding judge would occupy questionable ground if he arrested counsel in the attempt to deduct inferential facts or intents from testimony in proof. See also *Hobbs v. State*, 74 Ala. 79.

In *Childress v. State*, 86 Ala. 77, it was declared that in argument to the jury, counsel for the prosecution may urge a fearless administration of the law, commenting on the tendencies and inferences of evidence, making no statement of fact which is not supported by the evidence, and avoiding all gross and unwarranted abuse and appeals to prejudice. In replying to defendant's counsel, who had referred to several cases of circumstantial evidence, among them cases which had occurred in the neighborhood, state's counsel stated to the jury that they "must decide the case according to the law and the evidence, and not allow

these sensational, dime-novel stories to have any weight in making up their verdict—that counsel referred to these remarkable cases in order to frighten the jury out of doing their duty;" and this court said that state's counsel had not exceeded the limit of legitimate argument.

So in *Dollar v. State*, 99 Ala. 236, it was declared that in arguments to the jury in a criminal case, a "narrow or rigid" rule should not be laid down in restraint of the argument of counsel; that counsel should not state as a fact that of which there is no evidence, whatever, and which is irrelevant to the cause; and that the solicitor may comment upon the evils generally of the crime which the law he is seeking to enforce tends to prevent; but he may not state to the jury, as fact, "the existence of particular evils, in the locality of defendant's offense, and to which that offense is supposed by him to be related." That "The defendant's guilt must be determined by the facts touching the particular act with which he is charged, and  *  *  *  his punishment must be determined by the nature of the act committed, and a consideration of the evils generally resulting from the commission of such acts, within the limits prescribed by law."

The rule declared in *Cross's Case, supra*, has been reaffirmed by later decisions of this court.—*Hill v. State*, 146 Ala. 51; *DuBose v. State*, 148 Ala. 560; *Tucker v. State*, 167 Ala. 1; *Roden v. State*, 5 Ala. App. 247; *Wall v. State*, 2 Ala. App. 157; *Johnston Bros. v. Bentley*, 2 Ala. App. 281.

There was evidence adduced by the state from which the concubinage of the defendant with the deceased may be inferred, and likewise evidence, for the defendant, from which a common law marriage between defendant and the deceased may be inferred. While the state is not required to show motive, yet the relation of the parties, and all the circumstances attendant on the homicide, may be given in evidence, to shed light upon the question of ill-will, malice or hatred by the defendant entertained towards the deceased—facts which tend to shed light on the question of motive that would or would not actuate the defendant to the commission of the crime. If the association of the defendant and the deceased had been that of lawful marriage, and there existed between them no grievance or bad feeling, the probabilities for the commission of so heinous a crime would be less than if the relation had been that of illicit intercourse and one of the parties

was tiring of that relation and desiring to terminate it, as the evidence tended to show.

The solicitor's employment of the expression, that the defendant at the time of the killing was "already violating the law," is explained by the subsequent words—"living in adultery with the deceased as his concubine," and did not mean more than this subsequent statement. The argument was clearly within the inference of the evidence, and was not otherwise improper.

[10] (6) The court properly refused charge 2-B, requested by defendant, for that it does not correctly state the burden of proof in a criminal case. Such a charge was condemned in *Bonner v. State,* 107 Ala. 97, for the use of the words, "reasonable chance of mistake."—*Thomas v. State,* 107 Ala. 13. This expression has not the same meaning as *beyond a reasonable doubt.*— *Sims v. State,* 100 Ala. 23.

[11] Charge 2-C was an invasion of the province of the jury; they alone could determine whether or not the defendant "was free from fault in bringing on the fatal difficulty."

[12] Defendant's refused charges 5, 2-D, 2-E, and 2-G, were properly refused. Under the evidence it was a question for the jury to say whether or not the state had shown, beyond a reasonable doubt, defendant's guilt of murder in the first or in the second degree. The evidence affords an inference against defendant's innocence.—*Hargrove v. State,* 147 Ala. 97; *Davis v. State,* 152 Ala. 82; *Turner v. State,* 97 Ala. 57. Charge 2-F was covered by given charge 21.

[13-14] The lower court properly refused charge 24, for the error of directing an acquittal on the reasonable doubt of any one juror. Moreover, the charge was faulty in that it sought to instruct the jury that the right of acquittal was established, upon a reasonable doubt growing out of any part of the evidence, without consideration of, or reference to, the whole evidence in the case—which is not the law. If, after a consideration of all the evidence, the jury have a reasonable doubt of the defendant's guilt, arising out of any part of the testimony, they should acquit.—*Davidson v. State,* 167 Ala. 68; *Griffin v. State,* 150 Ala. 49; *Black v. State,* 1 Ala. App. 170.

[15] There was no error in the refusal of charge 26, for it was covered by the defendant's given charges. Moreover, the charge was properly refused, for the use of the word "supposition." All cases in this state, holding that the refusal of such a

charge is erroneous, are hereby overruled.—*Dawson v. State,* 71 South. 722; *Richardson v. State,* 68 Ala. 57.

The case is affirmed.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SOMERVILLE and GARDNER, JJ., concur.

SAYRE, J., not sitting.

MAYFIELD, J.—I concur, but wish to guard my concurrence against holding that the defendant's general bad character after the offense can ever be inquired into for any purpose. His character for truth and veracity may be shown, up to the time of the trial; but the evidence must be limited to that sole purpose, and this cannot be done by showing his general bad character, after the offense, though the general bad character, as a rule, tends to impeach, or go to the credibility of a witness.