(121 So. 9)

## CAYLOR v. STATE.   (3 Div. 596.)

Court of Appeals of Alabama.   Sept. 18, 1928.

Rehearing Denied Oct. 30, 1928.

**2**

See, also, 22 Ala. App. 592, 118 So. 145; 218 Ala. 113, 118 So. 147.

Rushton, Crenshaw & Rushton, of Montgomery, and R. E. L. Cope, of Union Springs, for appellant.

Charlie C. McCall, Atty. Gen., Thomas E. Knight, Jr., Asst. Atty. Gen., and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for the State.

SAMFORD, J. This is the second appeal in this case. State v. Caylor, 21 Ala. App. 627, 111 So. 195.

The controlling question on this appeal, as in the former, is one of jurisdiction and venue. For that reason we do not enter into a discussion of the facts except in so far as they affect the question at issue.

 In the opinion then rendered, this court declared the law as to jurisdiction of courts in this class of cases, and we adhere to the statement there made. From that case it can be readily seen the locus of the offense charged might, under certain statements of fact, be in any county in the state, but this jurisdiction may not become ambulatory, so as to permit a wife, though cruelly treated, to wander from county to county, and thereby choose a county of her own selection in which to prosecute her derelict spouse.

In the case of State v. Dvoracek, 140 Iowa, 266, 118 N. W. 399, speaking of such an offense as is here considered it was said:

"The penalty is denounced, not on the commission of any affirmative act, but on the omission of the plainest duty. Necessarily, then, the venue depends on where the omission to perform the duty occurred. * * * It was his duty as husband and father to provide for them and furnish them with food, clothing, and shelter at their place of residence in Story County."

In the case of State ex rel. Delevan v. Justus, 85 Minn. 114, 88 N. W. 415, where the desertion took place in H—— county, and the wife was driven by defendant to R—— county, it was contended by the state that the duty to support the wife was transferred

to R—— county. The Chief Justice of the Minnesota Supreme Court, in declining to agree to the above contention, has this to say:

"The conclusion does not follow from the premises, conceding them to be true; for it was in the county of H——, where he resided and actually was at the time, that he wilfully omitted and refused to support his wife. If the contention of the State be correct, then the wife may, by taking up her residence in any county in the State she may elect, make the crime ambulatory, and render the husband guilty of felony therein, although he may never have been within such county. That she cannot so do is too obvious to justify any discussion of the proposition."

Persuasive to this conclusion are the decisions of the New York Court of Appeals, Bayne v. People, 14 Hun (N. Y.) 181, and People ex rel. Drake v. Bergen, 36 Hun, 241, where it is held that a husband who resides in another county cannot be prosecuted for abandoning his wife in another county simply because the wife after abandonment removes to that county.

After being abandoned in one county she may not by taking up her residence in another county confer jurisdiction upon the court in the latter to punish the husband for the offense.

The presence of an offender within the county where a crime is committed is not always essential, but some portion of the act or omission to act must have taken effect therein. 1 Bish. Crim. L. 110, 111.

In the case of Cuthbertson v. State, 72 Neb. 727, 732, 101 N. W. 1031, 1033, in a case charging abandonment and nonsupport of the wife, the court, after an elaborate argument, supported by cited authority, says:

"It is quite immaterial where the first act of separation occurs, if such act is followed by a wilful refusal to support at the place previously provided by the husband and considered by them as their home. The county in which the home is fixes the venue of the offense."

See Bayne v. People, 14 Hun (N. Y.) 181. In the last-cited case the court concludes: "The offense is complete when the abandonment takes place." State v. Weber, 48 Mo. App. 500. In the case of Johnson v. People, 66 Ill. App. 103, defendant sent his wife to Peoria, promising to support her there. Failing to do this, it was held that the venue was in Peoria. This holding is in line with the previous holdings of this court. State v. Caylor, 21 Ala. App. 627, 111 So. 195.

■ It is, however, insisted that the statute (Code 1923, § 4491), fixes the venue in the county in which the wife may be at the time such complaint is made. That of course is the letter of the statute, but statutes must be construed so as to harmonize them if possible with the Constitution and with the gen-

eral policy of the state. The general policy of the state, at least as far back as the Constitution of 1868, has been that the accused in criminal prosecutions is entitled to a trial by an impartial jury of the county or district in which the offense was committed. Const. 1901, § 6; Hill v. State, 43 Ala. 335; Grogan v. State, 44 Ala. 9; Jackson v. State, 90 Ala. 590, 8 So. 862; Taylor v. State, 131 Ala. 36, 31 So. 371; Chambers v. State, 17 Ala. App. 178, 84 So. 638. All of the foregoing cases, some of which are misdemeanors and some felonies, recognize the right guaranteed by the Constitution, but hold in effect that in certain cases the county boundaries may be enlarged so as to obviate the necessity for strict proof of county boundaries; even that holding has been doubted, as shown by the opinions in the Taylor and Jackson Cases, supra, and the indications were that a different conclusion might have been reached but for the fact that the Constitution of 1875 carried forward the provision of the Constitution of 1868 after the construction had been placed upon it in the Hill Case, supra. Under a strict construction of section 6 of the Constitution of 1901, persons charged with misdemeanors by affidavit or information have no guaranty that trial must be had by an impartial jury in the county where the offense was committed, and therefore it would seem that the Legislature has the power to fix the venue in misdemeanor cases where the prosecution is begun by affidavit or information in any county in the state, however revolting such an act would be to the public conscience. Attention is here called to the fact that the Supreme Court in the Hill Case and the Taylor Case, supra, treat the question as if the Constitution does apply. In the face of the general understanding and policy of the state, would a Legislature pass such a statute?

■ In construing the statute here involved, to wit, section 4491 of the Code of 1923, which undertakes to control the judicial mind, the courts will have in mind, not alone sections 42 and 43 of the Constitution dividing the powers of government, but will bear in mind the general policy of the state in dealing with criminal prosecutions, which is not changed by statute unless the intent of the Legislature to change it be made to clearly appear. This general policy is expressed in section 4891 of the Code of 1923, having been brought forward from six former Codes, while section 4491 is new, having been taken from Act 1919, p. 181, § 7. It is inconceivable that the Legislature intended by this act to override section 4891, supra, and therefore, we hold, as we have already said, that the declaration in section 4491 must mean that an offense under that chapter shall be held to have been committed in any county in which the defendant was under duty to support his wife or child. There can be

4

no crime where there is no duty, and the husband still has the right, in this state, to control the family domicile, so long as he acts in good faith. Ex parte Jackson, 212 Ala. 496, 103 So. 558.

Under the facts in this case, the duty of support and maintenance of the wife was primarily in Bullock county. Whether this defendant without *just cause* deserted his wife or willfully neglected or refused or failed to provide for her support and maintenance are questions to be determined by the courts in the county where the duty legally exists. Any other conclusion would open the door to all sorts of abuses, and would tend to concentrate prosecutions of this nature into those populous industrial centers where dissatisfied wives drift towards the glamour of the lights which appear to give relief from the less colorful if more peaceful life in rural communities.

But it is urged that the offense here charged is continuing in its nature. So it is, but it continues at the place where the duty is and not elsewhere, and the place where the duty is may not be changed at the whim of the wife. A husband might so conduct himself as to drive the wife from the home, or he might permit the wife to reside at a place other than where he has fixed the family domicile, in either of which events the duty to support would follow the wife, but it would be unthinkable to hold that a wife could voluntarily leave the family domicile, go to a remote part of the state, and thereby fix the venue in the prosecution of the husband for nonsupport.

Now to a consideration of the facts of this case as they affect the question of jurisdiction. The defendant and the prosecuting witness, both being mature in years, she a widow well over 40, and he twice a widower well over 50, contracted a marriage in the county of Montgomery, with a view of living together as man and wife at his home at Suspension in Bullock county, where they went and set up housekeeping. They lived together "off and on" for about 5 years, during which time there was much bickering, some physical encounters and several separations, until in July, 1925, she left entirely, coming to Montgomery, where she sought a divorce with alimony. During the row or quarrel in July, 1925, she told him she would go to Montgomery, and he replied, "Go where you damned please," but after that she returned to him and remained three or four months, when she finally, apparently without further cause, left, coming to Montgomery, where she has since remained. All of the time that she was at the home in Bullock county, she was supported by defendant, nor is there any evidence tending to prove that he ever refused her support at that place, and, when she left the last time and came to Montgomery, she worked as a fitter, earning $75 per month, in the employment in which she was engaged before the marriage. She claims and testifies that the separation was caused by his cruel treatment, but this testimony relates to the various separations prior to the time after August 25, 1925, when she returned to defendant and remained with him "three or four months." Defendant and his witnesses place the blame on the wife, of whom it was testified that she was of a violent and disagreeable temper, not satisfied to live at Suspension, at which place, as she says, there were only six white families. All of the witnesses for the defendant testify as to her habitual absence, and, when she was at home, of her disagreeable disposition and actual violence towards the defendant and the members of his family by his first wife. It is not our duty and we do not draw conclusions of fact from all this mass of testimony further than to say that the whole of it without dispute is to the effect that the duty to support the wife by defendant was at his home in Bullock county, and of whatever crime either of omission or commission the defendant was guilty, took place in Bullock county, and whatever prosecution can or ought to be brought must be begun and prosecuted there.

The defendant introduced evidence tending to impeach the testimony of the prosecutrix Mrs. Caylor. It was therefore relevant and proper for the state to introduce witnesses as to her general good character and as to her general character for truth and veracity. Watson v. State, 155 Ala. 9, 46 So. 232; Tilley v. State, 167 Ala. 107, 52 So. 732. However, particular facts are inadmissible in evidence on the issue of character upon the direct examination or even rumors of such facts as may be either damaging or beneficial to the character of the person sought to be attacked or sustained. On cross-examination the rule is different. Jackson v. State, 78 Ala. 471; Smith v. State, 197 Ala. 193, 72 So. 316; Lambert v. State, 208 Ala. 42, 93 So. 708. In the last-cited case, the rule is stated to be:

"The questions on direct examination must be confined to the general reputation or character of the person, and 'no evidence is allowed of particular acts of good or bad conduct, either to sustain or to impeach character.'"

The defendant duly and seasonably objected to questions propounded to state witnesses, and moved to exclude the answers as follows:

"Q. Do you know whether she is a woman of bad temper? A. She and I never had any. Q. Did you ever hear her use obscene, profane or filthy language in your life? A. No, sir. Q. Ever see her act unbecoming a lady at any time since you have known her? A. No, sir."

These questions with slight variations were asked several witnesses for the state, all of which were answered in a similar manner as the above-quoted answers. The foregoing questions called for testimony, and the answers were the private opinions of the witnesses, not based upon the general character of the witness Mrs. Caylor in the community in which she lives. Jackson v. State, 106 Ala. 12, 17 So. 333. The rule for examination of witnesses sustaining character is fairly stated in 40 Cyc. p. 2649. The court erred in its several rulings as above set out.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

### On Rehearing.

It is urged in brief, on application for rehearing, that the court consider the visit made by Mrs. Caylor to Suspension in June, 1926, and also two letters written by her to defendant after her return, one of which was written immediately before, and the other immediately after her return from that visit. According to her testimony, the visit was made "to see if we could not patch things up; if not, that he could make some allowance for me." This visit and these letters do not impress the court as a bona fide offer to return to defendant as his wife, but rather as an effort to make evidence in a prosecution to enforce the payment of money.

The original opinion is corrected and extended, and the application is overruled.