<hr/>

## Ford B. Johnson v. The People of the State of Illinois.

1. CRIMINAL LAW—*Abandonment of Wife and Children—Venue.*— The venue in a prosecution under the act of June 17, 1893, against a husband for abandoning his wife and children, is properly laid in the county where the wife and children are sent by him, and where they become dependent, no matter where the husband may be residing at the time.

2. WIFE ABANDONMENT—*Where the Offense is Committed.*—Where a husband sent his wife and children to her mother in Peoria county, and

left them there without means of support, to become dependent, *it was held* to be an act of abandonment in Peoria county, and properly indictable there, although the husband had never been in that county.

Indictment, for wife abandonment. Error to the County Court of Peoria County; the Hon. ROBERT H. LOVETT, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

ISAAC C. EDWARDS, attorney for plaintiff in error.

The principle is as well settled as is any other applicable to criminal trials, that when the record purports to contain all the evidence given on the trial below it must affirmatively appear from the evidence that the offense charged was committed in the county alleged in the indictment, otherwise a judgment of conviction will be reversed. Dougherty v. The People, 118 Ill. 163; Buckrice v. The People, 110 Ill. 33; Moore v. The People, 150 Ill. 405; Rice v. The People, 38 Ill. 435; Jackson v. The People, 40 Ill. 405; Sattler v. The People, 59 Ill. 68; Ferkel v. The People, 16 Brad. 310.

RICHARD J. COONEY, State's Attorney, FRANK J. QUINN, Assistant State's Attorney, and J. A. WEIL, attorneys for defendant in error, contended that the offense was committed in Peoria county; that both abandonment and neglect took place in this county, or in other words, the offense was committed in Peoria county. This fact is to be determined from all the evidence, facts and circumstances in proof surrounding the alleged offense. Bland v. People, 3 Scam. 364.

There is a difference between an act and the evidence of it, so that the prosecuting witness' testimony as to what took place in Iowa and Livingston county, Illinois, was proper, as tending to prove the offense in Peoria county. Bishop's New Criminal Procedure, Vol. 1, Sec. 51; Bland v. People, 3 Scam. 364.

The personal presence of the offender is not an indispensable element in the locality. That the offender must be personally present is but a popular notion of the lay mind

and not found in the law. A crime is, in law, committed in the place where the doer's act takes effect, whether he is himself in such place or not; in this way, one may even perpetrate an offense against a State or country upon whose soil he never set foot. Bishop's New Criminal Procedure, Vol. 1, Sec. 53; Id., Vol. 1, Secs. 110, 111.

And a crime which consists of a series of acts whereof a part are in one county and a part in another, can not by the common law rules, be prosecuted in either, unless enough transpires in one to constitute a complete offense. The plaintiff sent, and permitted and suffered his wife and children to remain, in Peoria county from about October 1, A. D. 1894, to May 1, A. D. 1895, in a penniless and destitute condition, wholly abandoned and neglected; even under the rigidity of the common law, he would be triable in Peoria county. Bishop's New Criminal Procedure, Sec. 54.

The same may be implied by a statute, as, if it creates an offense which in terms consists of acts both within and without the State, an indictment will lie in the county wherein, within the State, the domestic part of the transaction occurs, for otherwise the enactment would be inoperative. Obviously, too, a new offense entirely within the State may be created by such statutory words as will bring it within the same principle; by necessary implication, therefore, authorizing proceedings in a county wherein a part only of the guilt was incurred. Bishop's New Criminal Procedure, Vol. 1, Sec. 56.

From the common law rule that no more need be done within the county than is strictly necessary to the crime, it follows that what is parcel of it or not at the election of the prosecution, or is mere evidence, need not be taken into the account. Bishop's New Criminal Procedure, Vol. 1, Sec. 57.

If a father send his wife and infant child into another county and fail to provide for the child's support, the abandonment is voluntary and willful and a misdemeanor, though he have sufficient cause for refusing to live with the mother. Bennefield v. State, 4 S. E. (Ga.) Rep. 869.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an indictment found under the act of June 17, 1893 (Rev. Stat. 1895, p. 588, Sec. 480), charging the defendant with having abandoned his wife and two children under the age of twelve years, and neglecting and refusing to maintain and provide for them at and within said Peoria county.

The case was certified to the County Court, and upon a trial by jury, the defendant was convicted, and a motion for new trial being overruled, he was sentenced to pay a fine of $100 and costs. The defendant prosecutes this writ of error and insists upon a reversal, mainly on the ground that the court was without jurisdiction to try him in Peoria county.

It is conceded that the defendant and his wife, Laura C. Johnson, were duly married on January 8, 1882, and that they have two children, Gerald Johnson, aged eleven years, and George Johnson, aged eight years. Defendant and his wife were married in Peoria county at the home of the wife's parents, and lived together at various places in Nebraska, Pennsylvania and Iowa, until the month of September, 1894, when they were living at Sioux City, Iowa, at which time and place a separation occurred, and since then they have not lived together. There is some conflict in the evidence as to the reasons for this separation, and we do not deem it a very material question; but it is not denied that defendant left the home where he had been living with his wife and children, and thereafter did very little, if anything, for their support, so that, as the wife claims, she was compelled to and did leave the State of Iowa, and, with her two children, returned to her mother's home in Peoria county, Illinois, where she has since resided, the defendant doing nothing whatever for her support, or that of the children, since she came to this State.

About October 1, 1894, shortly after his wife and children had left the State of Iowa, the defendant returned to Illinois, and went to live with his mother, at Pontiac, in Liv-

ingston county. Mrs. Johnson testifies that she arrived at Peoria, September 29, 1894, and that she had not seen the defendant for a week before she left Iowa, and then only on the street. That he had left her a month before that. Learning that the defendant was at Pontiac, on March 22, 1895, the wife took one of the children with her and went to see the husband, staying with him at Pontiac from Friday until the following Wednesday. She testifies that he promised her he would do right and go to work, and send her money; that he took her to the depot and bought a ticket for her, and sent her back to Peoria, and promised to be over in two or three weeks, and that she left him with that promise, and that that was the reason she left Pontiac and came back to Peoria; that he did not come to Peoria, nor send her any money, and has done nothing for her support, or that of the children, since September, 1894. The defendant nowhere denies this conversation, nor that he sent his wife back to Peoria county and promised to support her and the children there, and yet, within the same month of March, defendant wrote a letter to his wife, telling her that his " days of providing for her were over."

Upon these facts, we think the venue was properly laid in Peoria county, although the defendant had not been in that county for several years prior to March, 1894.

If the defendant can not be indicted and tried in Peoria county, he can not be punished anywhere. It may be conceded that under the laws of this State a defendant can only be tried in the county where the offense was committed. Hence, if the defendant in this case did not abandon his wife and children in Peoria county, he was improperly tried and convicted there. But it is to be observed that the personal presence of the offender is not always an indispensable element in fixing the local jurisdiction of a criminal offense. A crime is, in legal contemplation, committed in the place where the doer's act takes effect, whether he is himself in such place or not; in this way one may even perpetrate an offense against a State or county upon whose soil he never set foot. 1 Bishop's New Crim. Proc., 53; 1 Bishop's New Crim. Law, 110-111.

In the case of Bennefield v. State, 4 S. E. Rep. 869, the precise question here involved was before the Supreme Court of Georgia, and determined adversely to the contention of plaintiff in error. In its opinion, delivered by Simmons, J., the court says: "It is argued that the court found contrary to law, because the separation of the husband and wife occurred in Heard county, and therefore the court in Carroll county had no jurisdiction to try the case. The record discloses the fact that while the separation between husband and wife took place in Heard county, the husband hired one Sheats to move his wife and child to her father in Carroll county. The child, according to the evidence, was not dependent and destitute in Heard county, but became so only after it was left in Carroll county; and from the time of the separation up to the trial of the case, the husband had never contributed a cent toward the support and maintenance of the child. We think that where a husband voluntarily and willfully separates from his wife in one county, and sends her by his agent into another county, and his children there become dependent and destitute, he is indictable in the latter county, because it was by his act that they were removed from one county to another. In this case the husband's agent carried the child from Heard into Carroll. It was the same as if he had stood upon the county lines between Heard and Carroll, and had pushed his child across the line into Carroll, and then left it dependent and destitute. If the law were otherwise, it would be an easy matter for people who wish to get rid of their wives and offspring, to send them to a different county, and leave them dependent and destitute in that county, and avoid indictment under this statute. We therefore hold that the court in Carroll county had jurisdiction of this offense under the facts disclosed by the record, and that the court committed no error in refusing a new trial on this ground."

The statute under which the prosecution was had in the case cited, was similar to the one under which plaintiff in error was indicted. If the reasoning of the court above quoted is sound, and we think it is, then it is equally appli-

Johnson v. The People.

cable to the case at bar as to the one the Georgia court had under consideration.  Here, the plaintiff in error took his wife and child to the depot, bought a ticket for his wife and sent them to Peoria county, with a promise to join them there and support them.

Judging from his letter of a few days afterward, above referred to, he never intended to fulfil this promise, but the intent to abandon was consummated after they reached Peoria county, and it can not be said they were abandoned in Livingston county.  It can make no difference that the wife had been living with her mother in Peoria county before she went to Pontiac to see her husband and claim that support she was entitled to under the law.  When he sent her back to Peoria county under the circumstances appearing in the evidence, she went with his consent and assistance, and she and her children became dependent and abandoned in Peoria county, by reason of his failure to support them there, as he promised to do when he sent them away. We therefore hold that the indictment and trial in Peoria county was proper.

Objections are urged to the rulings of the court in permitting counsel for the people to ask certain questions of the plaintiff in error on his cross-examination.  While a witness in his own behalf, he had sworn to certain alleged facts touching his relations with his wife, his condition of health, and the causes of separation, and as to whose was the fault; and in view of his testimony on these subjects, we do not think it was error for the court to permit counsel for the people to ask him on cross-examination as to whether or not he had had the syphilis and communicated it to his wife, and concerning his trip to Chicago to the World's Fair with another woman, and questions of that kind, which seem to have been fairly germain to the subject-matter of the inquiry then before the jury.  In this action of the court we think there was no prejudicial error.

We think the law of the case was fairly given to the jury and we find no error in giving or refusing instructions.

The judgment will be affirmed.