# Illinois Official Reports

## Appellate Court

---

### *People v. DeBates*, 2021 IL App (2d) 200503

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAYE DeBATES, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-20-0503 |
| Filed | June 7, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 19-CF-308; the Hon. C. Robert Tobin III, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tricia Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Doug E. Ibendahl, of Chicago, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices McLaren and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1     The State appeals the trial court's order dismissing charges against defendant, Jaye DeBates, on the ground of improper venue. The State argues that the trial court erred in finding that eight residents of Boone County, whose names were allegedly forged on a candidate nominating petition, were not victims for venue purposes. We disagree and affirm.

¶ 2                                    I. BACKGROUND

¶ 3     A Boone County grand jury indicted defendant on eight counts of forgery (720 ILCS 5/17-3(a)(2) (West 2018)). Count I alleged that defendant,

> "with the intent to defraud, knowingly delivered to the State Board of Elections a false document, being a Representative in Congress Primary Petition containing a fraudulent signature of Carol Cox, a resident of Boone County, Illinois, knowing the document to have been thus made, and said document was apparently capable of defrauding another."

The remaining counts were substantively identical except for the individual's name.

¶ 4     Defendant moved to dismiss the indictment on several grounds, including that venue was improper in Boone County. He argued that the State had presented no evidence that the signatures were forged in Boone County. Instead, as alleged in the indictment, the essence of the offenses was the petitions' delivery to the State Board of Elections offices in Sangamon County. The State argued that the named Boone County residents were victims and thus it was proper to prosecute the action there.

¶ 5     The trial court disagreed with the State and dismissed the indictment on the ground of improper venue, finding no evidence that the named Boone County residents suffered any detriment due to the forgery of their signatures. The State filed a certificate of impairment and a timely appeal.

¶ 6                                    II. ANALYSIS

¶ 7     The State argues that the trial court erred by dismissing the indictment on venue grounds. Section 1-6(a) of the Criminal Code of 2012 (Code) dictates criminal-trial venue. Specifically, "Criminal actions shall be tried in the county where the offense was committed ***." *Id.* § 1-6(a). Section 114-1 of the Code of Criminal Procedure of 1963 allows a defendant to file a motion to dismiss a charge on several grounds, including that the "county is an improper place of trial." 725 ILCS 5/114-1(a)(7) (West 2018). Section 114-1 further provides:

> "When a defendant seeks dismissal of the charge upon the ground set forth in subsection (a)(7) of this Section, the defendant shall make a *prima facie* showing that the county is an improper place of trial. Upon such showing, the State shall have the burden of proving, by a preponderance of the evidence, that the county is the proper place of trial." *Id.* § 114-1(d-5).

¶ 8     Forgery is defined as follows:

> "(a) A person commits forgery when, with intent to defraud, he or she knowingly:
>
>     (1) makes a false document or alters any document to make it false and that document is apparently capable of defrauding another; or

(2) issues or delivers such document knowing it to have been thus made or altered[.]" 720 ILCS 5/17-3(a)(1), (a)(2) (West 2018).

¶ 9        A "document apparently capable of defrauding another" is "one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated." *Id.* § 17-3(c).

> "The gist of the offense of forgery is the intent to defraud involved in the making of a forged instrument or knowingly uttering the same. The offense is not less inimical to society, nor any more nor less harmful, by reason of the identity of the party defrauded or intended to be defrauded." *People v. Crouch*, 29 Ill. 2d 485, 488 (1963).

In *Crouch*, the defendant was charged with forgery of a check. The supreme court held that, because the charge "identifie[d] the person to whom delivery [of the check] was made and contain[ed] an allegation that the proscribed action was taken with an intent to defraud," there was no need for the charge to also specify the person whom the defendant intended to defraud. *Id.* at 489.

¶ 10       Here, defendant was charged with forgery by delivery in that he, "with the intent to defraud, knowingly delivered to the State Board of Elections a false document, being a Representative in Congress Primary Petition." The motion to dismiss argued that defendant, who resides in Putnam County, delivered the petition to the State Board of Elections offices in Sangamon County. Thus, the case had no substantial connection to Boone County.

¶ 11       The State's response presented no evidence that the signatures were forged in Boone County or that the petition was delivered anywhere other than in Sangamon County. Instead, the State argued that the named Boone County residents were victims per section 1-6(b) of the Code, which provides, "[i]f a person committing an offense upon the person of another is located in one county and his victim is located in another county at the time of the commission of the offense, trial may be had in either of said counties." 720 ILCS 5/1-6(b) (West 2018).

¶ 12       The trial court found no evidence that the named Boone County residents were victims in any meaningful sense, having suffered no physical injuries or monetary loss. The State contends that the trial court's definition of victim is overly narrow and that an offense may be prosecuted wherever the effects of the offense are felt. It argues that the Boone County residents are victims because their reputations were damaged by having their names and identities marshaled to support a candidate they do not support. We disagree.

¶ 13       The State presented no evidence that any of the eight people "created, transferred, altered or terminated" any "right, obligation or power" by having their names forged on the petition. *Id.* § 17-3(c). The only entity even asked to do so was the State Board of Elections when it was asked to put the defendant's name on the ballot.

¶ 14       The State argues, nonetheless, that the Boone County residents "had their identities appropriated in support of a candidate that they had no desire to support" and "[t]hat false support could have given defendant the legal right to run in their party's primary and potentially become their representative in Congress." The State cites no case holding that such an amorphous "harm"—which conceivably could be felt by all residents of the congressional district, regardless of whether their signatures were forged—is sufficient to make one a "victim" of a forgery. And, in any event, the State points to no evidence that the Boone County citizens were actually offended by having their identities thus appropriated. For all we know, any or all of the false signatories might have signed the petition if asked.

¶ 15 The State cites several cases supporting the proposition that a forgery "victim" need not suffer a monetary loss, but none are helpful to its cause.

¶ 16 In *People v. Henderson*, 71 Ill. 2d 53, 57 (1978), the court held that the defendant, who presented a pharmacist with a forged prescription, could be charged with forgery even though she did not intend to defraud either the pharmacist or the doctor whose signature was forged. The court cited *Crouch* for the proposition that the gist of forgery is the intent to defraud regardless of whether anyone is actually victimized. *Id.* But the court simply held that naming a specific victim was not necessary. It did not hold that the doctor was a victim.

¶ 17 Similarly, in *People v. Merchant*, 5 Ill. App. 3d 636, 637 (1972), the defendant presented a pharmacist with a forged prescription. The court held that the defendant could be charged with forgery because, by asking the pharmacist to dispense drugs without a proper prescription, he intended to "cause another to assume a right or power with respect to a person or property." *Id.* at 638. The court noted that the pharmacist could have been subjected to criminal prosecution or the loss of his license for dispensing a drug to someone not legally entitled to it. *Id.*

¶ 18 Finally, in *People v. Muzzarelli*, 331 Ill. App. 3d 118, 120 (2002), the defendant, a teacher, was convicted of retail theft. Before sentencing, the judge received a letter on school letterhead, apparently signed by a teacher at the school, asking for leniency for the defendant. The defendant later admitted that she wrote the letter herself, and she was charged with forgery. *Id.* The court affirmed her conviction, holding that monetary loss was not necessary for a conviction of forgery. The court noted that the letter "created a legal obligation" in the trial judge to consider it in relation to the defendant's sentence and, thus, it was capable of defrauding. *Id.* at 123.

¶ 19 None of those cases stands for the proposition that the people whose signatures were forged were victims. *Henderson*, consistent with *Crouch*, held that a particular person need not be named as a victim. *Merchant* held that the victim was the pharmacist, who was asked to dispense a prescription unlawfully. And in *Muzzarelli*, the judge who had to consider the forged letter was the victim. Nothing in those cases indicates that the doctors and the teacher whose names were forged were regarded as victims of the offenses. Indeed, it is not clear from those opinions that they were even real people. It is possible that the defendants simply used made-up names. See *People v. Eston*, 49 Ill. App. 3d 747, 749-50 (1977) (apparent maker of false document need not be real person).

¶ 20 Here, the only entity that was asked to "assume a right or power with respect to a person" (*Merchant*, 5 Ill. App. 3d at 638) was the State Board of Elections, which was asked to improperly place defendant's name on the ballot. See *People v. Gawlak*, 276 Ill. App. 3d 286, 292 (1995) (defendant who falsified hazardous waste labels intended to defraud the Illinois Environmental Protection Agency by causing it to assume that a site contained less waste than it actually had).

¶ 21 Moreover, the State's reliance on section 1-6(b) to establish venue in Boone County runs afoul of article I, section 8, of the Illinois Constitution, which affords defendants the right "to have a speedy public trial by an impartial jury *of the county in which the offense is alleged to have been committed*." (Emphasis added.) Ill. Const. 1970, art. I, § 8. "The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958).

¶ 22　　　　To convict defendant of forgery as charged here, the State had to prove that (1) defendant knowingly delivered a document that he knew was apparently capable of defrauding another, (2) he did so with the intent to defraud, and (3) the document was apparently capable of defrauding another. See 720 ILCS 5/17-3(a) (West 2018). As noted, although forgery requires that the document appear to have been made by another, that "another" need not be a real person (*Eston*, 49 Ill. App. 3d at 749-50), and no one need actually be defrauded (*People v. Lawson*, 2015 IL App (2d) 140604, ¶ 28). More to the point, however, even where the "another" whose signature is forged is a real person who suffered a loss, as the State urges here, this is irrelevant in placing venue because neither fact is an element of forgery. It follows, then, that establishing that the "another" whose signature was forged is a real person who suffered some loss does not otherwise convert the person into a victim for purposes of section 1-6(b).

¶ 23　　　　Interpreting "victim" for purposes of section 1-6(b) to include the Boone County citizens, whose status was otherwise not relevant to proving that the offense of forgery was committed, would allow trial in Boone County notwithstanding that no part of the offense was committed there. This article I, section 8, expressly prohibits. In short, the State may not designate someone as a victim where the elements of the offense do not otherwise require it, merely to establish venue in a particular county. To the extent that named Boone County citizens might be considered victims in a general sense, they were not victims as understood for purposes of section 1-6(b) in light of article I, section 8.

¶ 24　　　　Our supreme court's recent decision on venue, *People v. Bochenek*, 2021 IL 125889, is consistent with our analysis. *Bochenek* upheld the constitutionality of section 1-6(t)(3) of the Code (720 ILCS 5/1-6(t)(3) (West 2016)), which is the special venue provision for identity theft. Section 1-6(t)(3) allows venue where the victim of the identity theft resides. *Id.* The court noted that a person commits identity theft when he or she knowingly " 'uses any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services or other property.' " *Bochenek*, 2021 IL 125889, ¶ 16 (citing 720 ILCS 5/1-6(t)(3) (West 2016)). The court observed that the identity theft statute and section 1-6(t)(3) represent a legislative determination that a person's personal identifying information is located where the victim resides. *Id.* ¶ 17. Thus, "the part of [identity theft] that involves misappropriation of the personal information can be said to be committed in the county where the victim lives." *Id.* Therefore, section 1-6(t)(3) does not violate a criminal defendant's right under article I, section 8, to be tried in the county in which the offense is alleged to have been committed. *Id.* ¶ 23.

¶ 25　　　　The legislature has identified the "victim" of identity theft as the person whose personal identifying information is used to fraudulently obtain credit, money, goods, services, or other property. See 720 ILCS 5/1-6(t)(3), 16-30(a)(1) (West 2016). There is no corresponding provision identifying, as the "victim" of forgery, the person whose name is forged. Moreover, a person whose identity has been stolen and used in the manner the statute identifies has suffered material and demonstrable harm, far unlike the abstract harm that the State claims was suffered by the Boone County citizens.

¶ 26　　　　Finally, we note the State's reliance on *Johnson v. People*, 66 Ill. App. 103 (1896), to show that a prosecution may occur wherever the effects of the offense are felt. "Appellate opinions before 1935 have no binding force on Illinois courts." *People v. Glisson*, 202 Ill. 2d 499, 506 n.1 (2002). Moreover, *Johnson* is distinguishable. There, the defendant was convicted of

- 5 -

abandoning his wife and children in Peoria County even though he had not been in Peoria County for many years. The court noted that the wife and children were left destitute in Peoria County just as if the defendant had taken them there himself, thus shifting his family-support burden to the residents of Peoria County. Here, the citizens of Boone County will suffer no similar detriment.

¶ 27                                  III. CONCLUSION
¶ 28         We affirm the judgment of the circuit court of Boone County.

¶ 29         Affirmed.